[No. 33560. Department Two. April 26, 1956.]

JOHN A. GILE, as *Administrator, Appellant,* v. KENNEWICK PUBLIC HOSPITAL DISTRICT *et al., Respondents.*[1]

[1]Reported in 296 P. (2d) 662.

*Tonkoff, Holst & Hopp* and *Theodore D. Peterson,* for appellant.

*Gavin, Robinson & Kendrick, Moulton, Powell & Loney,* and *James Leavy,* for respondents.

HILL, J.—The plaintiff, as administrator of the estate of Sarah Helen Gile, deceased, and for the benefit of himself as surviving spouse and of a surviving child as authorized under our wrongful death statute (Laws of 1917, chapter 123, §§ 1, 2, p. 495 (Rem. Rev. Stat., §§ 183, 183-1 [*cf.* RCW 4.20.010, 4.20.020])), sued a public hospital district and others not here material for damages in the amount of $109,600 for her death. Demurrers were sustained to three causes of action predicated upon negligence, the taking of private property without compensation, and the breach of a warranty of fitness on the sale of blood. Orders were entered dismissing the three causes of action, and the plaintiff appeals.

It is alleged in the cause of action predicated upon negligence that the hospital district, through its employees,

" . . . negligently failed to properly and correctly ascertain and determine the blood type of said Sarah Helen

Gile . . . [and] negligently failed to furnish blood for transfusion . . . which was compatible with . . . [her] blood . . . and of a suitable and proper type,"

and that this was the cause of her death.

The demurrer to this cause of action was sustained because the statute providing for the creation of public hospital districts provides that a public hospital district " . . . shall not be liable for negligence for any act of any officer, agent or employee of said district: . . ." Laws of 1949, chapter 197, § 18(h), p. 603 (Rem. Supp. 1949, § 6090-35(h) [cf. RCW 70.44.060(8)]).

To avoid the immunity from liability for negligence which the statute on its face seems to provide, the plaintiff argues that the immunity applies only to negligent acts and not to negligent omissions. He cites certain other immunity statutes in which the legislature has said that no action shall lie for any "noncontractual acts or omissions" (Laws of 1917, chapter 92, § 1, p. 332 (Rem. Rev. Stat., § 4706 [cf. RCW 28-.58.030]); Laws of 1921, chapter 185, § 1, p.747 (Rem. Rev. Stat., § 9663 [cf. RCW 86.12.180])) and argues that the use in those statutes of the words "acts or omissions" indicates that the legislature recognizes a distinction between them.

 The argument is ingenious, but it gives a tortured interpretation to the statute. Negligence may consist of an act of commission or an act of omission, and it is absolutely inconceivable that the legislature intended that a hospital district could be sued for negligent acts of omission but not for negligent acts of commission. No act of the legislature reaching such a result has been brought to our attention. The acts referring to "noncontractual acts or omissions" do not use the word "negligence" and seem to us entirely irrelevant to any discussion of the meaning of the statute now under consideration.

The trial court correctly sustained the demurrer to the cause of action based upon negligence, because the statute specifically provides that the hospital district is not liable therefor. It is, therefore, unnecessary to enter into a dialectical discussion of whether the failure to determine correctly the blood type of Mrs. Gile was an act or an omission,

and, likewise, whether the furnishing of blood which was not of a suitable type was an act or an omission.

The contention that a cause of action could be predicated upon the theory that private property has been taken for a public or private use without compensation (Art. I, § 16 of our state constitution, both before and after the adoption of the ninth amendment) is, in our opinion, without merit. In this cause of action, the plaintiff repeats every allegation of the cause of action to which we have just held that a demurrer was properly sustained, and then adds:

"That by reason of the above mentioned acts [the acts of negligence just referred to] . . . the plaintiff was deprived of property, namely the life of Sarah Helen Gile, that by reason thereof plaintiff is damaged in the sum of $109,600.00."

Even if it be conceded *arguendo* that the husband and child of Sarah Helen Gile had a property right in the continued life of the wife and mother, the inclusion of an allegation to that effect does not give the administrator of her estate the authority to recover the value of that property right on their behalf. He sues for their benefit only by reason of special statutory authority. Laws of 1917, chapter 123, § 2, p. 495 (Rem. Rev. Stat., § 183-1 [*cf*. RCW 4.20.020]). See *Upchurch v. Hubbard* (1947), 29 Wn. (2d) 559, 188 P. (2d) 82; *Ryan v. Poole* (1935), 182 Wash. 532, 47 P. (2d) 981; *Jensen v. Culbert* (1925), 134 Wash. 599, 236 Pac. 101.

Further, it is clear that the husband and child lost their property right, if any, by reason of the negligence alleged. If an action for wrongful death caused by negligence is barred by § 18(h) of chapter 197, Laws of 1949, p. 603 (Rem. Supp. 1949, § 6090-35(h) [*cf*. RCW 70.44-.060(8)]), it follows that an action for the loss of property caused by that negligence would also be barred.

The demurrer to the cause of action predicated upon the taking of property without compensation was properly sustained.

We now turn to the cause of action predicated upon the proposition that the hospital district sold to Sarah Helen

Gile and her husband the blood used in the transfusion, and that there was a warranty of its fitness for the purpose intended.

Counsel for the plaintiff are certainly entitled to kudos for their efforts to avoid the effects of the immunity statute, but we are satisfied, for at least two reasons, that the demurrer to this cause of action was properly sustained.

We pass the questions relative to privity of contract, who would be the proper parties plaintiff, and for whose benefit such a contract action could be waged, and come to grips with the plaintiff's allegations, first, that there was a contract for the sale of blood, and, second, that by reason of such sale, there was a breach of a warranty of implied fitness for which the hospital district is liable.

The material allegations in this cause of action are that the hospital district,

"... in the regular course of its business operates, maintains, and furnishes hospital service to persons or patients, ... and that said defendant [hospital district] charged the plaintiff JOHN A. GILE and the deceased, SARAH HELEN GILE, the ordinary and regular charges made by a hospital operating for profit. ...

"That on or about the 12th day of May, 1953, Sarah Helen Gile, plaintiff's deceased wife, was entered and accepted as a paying patient of defendant corporations hospital for the purpose of having surgery performed upon her right knee; that on or about the 13th day of May, 1953, the said Sarah Helen Gile had surgery performed upon her right knee in said hospital; that at or about the hour of 4:00 o'clock P.M. of said 13th day of May, 1953, the said Sarah Helen Gile was given a routine blood transfusion upon the orders of defendant Edward B. Payne to promote the healing of the surgery; that ... the said Sarah Helen Gile died as a direct and proximate result of being given said blood transfusion. ...

"That the defendant hospital in the regular course of its business employed nurses, laboratory technicians, X-ray technicians, and other trained personnel. ...

"That in the regular course of its business said defendant hospital undertook to and did furnish laboratory services to the said Sarah Helen Gile, consisting of the typing of her blood and the ascertaining and determining of a donor's blood for type and compatibility in order to make a trans-

fusion or injection of said donor's blood into the living body of the said Sarah Helen Gile. . . .

"That . . . said defendant hospital did know the particular purposes for which said blood and services were required; that the decedent and the plaintiff herein relied upon the said defendant hospital's skill or judgment in selecting said blood and in furnishing said services and that by reason thereof there was an implied warranty from the said defendant hospital to the decedent and to the plaintiff herein that said blood and services were reasonably fit for the purpose for which they were intended to be used and that the specific blood so used was reasonably fit and proper to be injected into the living body of Sarah Helen Gile; that said blood was not fit and proper to be injected into the body of the said Sarah Helen Gile, and the services consisting of typing the blood of the said Sarah Helen Gile and in ascertaining and determining the donor's blood for type and compatibility for making said transfusion or injection of said donor's blood into the living body of the said Sarah Helen Gile were not reasonably fit or proper for said purpose; that there is an implied warranty in law that said blood or services thus sold to the plaintiff and to the decedent herein shall be reasonably fit for such purpose and that neither said blood nor said services were so fit or proper under the circumstances and that thereby the said defendant hospital breached its contract with the decedent and with the plaintiff herein to supply blood and services reasonably fit for the purpose for which they were intended. . . .

"That by reason of the above mentioned acts and breach of said contract and warranty of the defendant hospital the plaintiff herein was damaged, as hereinabove set forth, and in the sum of $109,600.00."

While specific allegations of negligence contained in the two causes of action hereinbefore considered are omitted from this cause of action, it is clear from the facts alleged that Mrs. Gile was in the hospital for surgery and post-operative care, that the usual hospital-patient relationship existed, and that a routine blood transfusion was ordered to promote the healing of the surgery.

In *Perlmutter v. Beth David Hospital* (1954), 308 N. Y. 100, 123 N. E. (2d) 792, the New York court of appeals had before it the same contention that plaintiff makes here relative to his right to maintain an action based on a breach of

warranty of fitness. That was an action to recover for injuries allegedly resulting from the transfusing of "bad blood" while the plaintiff was receiving medical care and treatment as a patient in the defendant hospital. It was alleged that the blood was "sold" by the hospital for sixty dollars as part of the customary services rendered by the hospital to its patients. The complaint contained no allegations of negligence. Recovery was sought on the theory that the supplying of blood constituted a sale, and that as a consequence there attached an implied warranty that the blood was reasonably fit for the purpose for which required. The complaint was dismissed, and the issue presented on appeal was whether the transaction described in the complaint created a vendor-vendee relationship between the defendant and the plaintiff. We quote from the opinion:

"A hospital is devoted to the care and healing of the sick. Not only does it gather in its wards 'a company of skilled physicians and trained nurses' and place their services 'at the call of the afflicted,' [citing case] but it also offers to patients resorting to the hospital 'the benefit of facilities' and equipment, developed through medical science, 'that would not otherwise be available.' [Citing case.] The essence of the contractual relationship between hospital and patient is readily apparent; the patient bargains for, and the hospital agrees to make available, the human skill and physical materiel of medical science to the end that the patient's health be restored.

"Such a contract is clearly one for services, and, just as clearly, it is not divisible. Concepts of purchase and sale cannot separately be attached to the healing materials—such as medicines, drugs or, indeed, blood—supplied by the hospital for a price as part of the medical services it offers. That the property or title to certain items of medical material may be transferred, so to speak, from the hospital to the patient during the course of medical treatment does not serve to make each such transaction a sale. ' "Sale" and "transfer" are not synonymous', and not every transfer of personal property constitutes a sale. [Citing case.] It has long been recognized that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act. [Citing cases.] . . .

"While determination, as to whether the essence of a par-

ticular contract is for the rendition of services or for the sale of property, may at times be troublesome and vexatious, there is no doubt that *the main object sought to be accomplished in this case was the care and treatment of the patient. The supplying of blood by the hospital was entirely subordinate to its paramount function of furnishing trained personnel, and specialized facilities* in an endeavor to restore plaintiff's health. It was not for blood—or iodine or bandages—for which plaintiff bargained, but the wherewithal of the hospital staff and the availability of hospital facilities to provide whatever medical treatment was considered advisable. The conclusion is evident that the furnishing of blood was only an incidental and very secondary adjunct to the services performed by the hospital and, therefore, was not within the provisions of the Sales Act. The fact that the treatment might have come from a physician, while the blood came from the hospital, is of no operative consequence; it is the transaction, regarded in its entirety, which must determine its nature and character. As long as it involves the medical care and treatment of a patient at a hospital, it is immaterial that it is the doctor who may diagnose and treat and the hospital which may supply facilities and material. . . .

" . . . He [one who enters a hospital as a patient] goes there, not to buy medicine or pills, not to purchase bandages or iodine or serum or blood, but to obtain a course of treatment in the hope of being cured of what ails him." (Italics ours.)

 We agree with the New York court of appeals that the contractual relationship between a hospital and a patient is not one of sale but is one of service; that during treatment in the hospital penicillin, casts, bandages, or blood, for which additional charges are made, may be transferred from the hospital to the patient; and yet the transfer is an incidental feature of the transaction and not a sale. It is true that there is in the present case an allegation that the blood and services in connection with the transfusion were sold to the plaintiff and Sarah Helen Gile, but there was also such an allegation in the *Perlmutter* case, *supra*. The court there said:

"It follows from the foregoing that the complaint should be dismissed, *unless,* as the court at Special Term believed, we are foreclosed by the allegation that the hospital 'sold' the blood to plaintiff. To adopt such a view represents an

oversimplification of the case. The sufficiency of the complaint cannot be made to turn on the presence of any particular word or words. It is the totality of the facts themselves which must be examined to determine the complaint's validity, not plaintiff's characterization of them or the conclusion which she seeks to draw from them. [Cases cited.] In this case, it is plain that what the complaint alleges and truly describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood to plaintiff for transfusion at a stated sum, as part of, and incidental to, her medical treatment."

We are satisfied that what the complaint in this allegation describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood for what is referred to in the complaint as "a routine transfusion . . . to promote the healing of the surgery" incidental to the contract of service between the hospital district and the patient.

It is also alleged that

" . . . the *services* [of the hospital district] consisting of typing the blood of the said Sarah Helen Gile and in ascertaining and determining the donor's blood for type and compatibility for making said transfusion or injection of said donor's blood into the living body of the said Sarah Helen Gile were not reasonably fit or proper for said purpose; . . . " (Italics ours.)

This is but repetition of the allegation of negligence made in the other causes of action, stated in contract phraseology. It is abundantly clear that, just as the plaintiff in *Kilbourn v. Seattle* (1953), 43 Wn. (2d) 373, 261 P. (2d) 407, was endeavoring to avoid the defendant's immunity from an action for its negligence by labeling it "nuisance," the plaintiff here seeks to avoid that immunity by labeling the defendant's negligence a "breach of warranty." We have but recently had occasion to point out that an action for breach of warranty was originally conceived as an action in tort rather than contract. *Freeman v. Navarre* (1955), 47 Wn. (2d) 760, 765, 289 P. (2d) 1015, citing 1 Williston Sales (Rev. ed. 1948) 501, § 195.

It is, of course, not necessary to prove negligence to prove a breach of warranty. However, when negligence

is clearly the proximate cause of the injuries for which damages are sought, a defendant's statutory immunity against liability for that negligence should bar recovery even though the negligence has also resulted in a breach of warranty. It appears from the statement of the cause of action with which we are here concerned, that the hospital district's negligence was the proximate cause of the death of Mrs. Gile, and that the same negligence caused the breach of warranty. For that reason, also, the demurrer to the cause of action predicated upon the sale of blood and a breach of warranty of fitness was properly sustained.

. The judgment of dismissal of the three causes of action involved in this appeal is affirmed.

HAMLEY, C. J., MALLERY, and WEAVER, JJ., concur.

ROSELLINI, J., concurs in the result.

[1]Reported in 296 P. (2d) 680.