[No. 38193.    En Banc.    June 15, 1967.]
DOMINICK UGOLINI, *Respondent*, v. STATES MARINE LINES, *Appellant.*\*

*Bogle, Bogle & Gates* and *Robert V. Holland,* for appellants.

*Schroeter, Farris, Bangs & Horowitz* by *Donald J. Horowitz,* for respondent.

ROSELLINI, J.—July 30, 1962, Dominick Ugolini suffered a heart attack while on board the SS *Beaver State,* owned by the States Marine Lines. This injury was not attributable to his employment. At the time in question, the ship was en route from the east coast of the United States to Yokohama, Japan, and had passed through the Panama Canal.

*Reported in 429 P.2d 213.

Immediately after suffering the heart attack, Mr. Ugolini was taken to the quarters which he shared with two other seamen. The room was small, hot, stuffy, and crowded. Mr. Ugolini could have been taken to the ship's hospital which was larger, not crowded, and better ventilated. The ship's captain contacted the medical officer in charge of the United States Public Health Service Hospital at San Francisco, and followed his advice in treating Mr. Ugolini. On the second day after his heart attack, Mr. Ugolini was taken ashore at Acapulco, Mexico, and admitted to the Sacred Heart Hospital, where he was treated for approximately 14 days and then released.

Upon being released from the hospital and while awaiting air transportation to Seattle, Mr. Ugolini was taken to the LaPlaza Hotel in Acapulco by the shoreside representative of States Marine Lines. He was assigned a room on the third floor. There were no elevators in the hotel, and Mr. Ugolini was required to use three flights of stairs. During his stay in the hotel, he complained to the shoreside representative that the room was hot; that it was necessary for him to walk up and down three flights of stairs; that no one in the hotel spoke English, and that he could not make himself understood. The shoreside representative did not remedy these conditions.

Three days later, the shoreside representative arranged for air transportation to Seattle. Upon his arrival at Seattle, Mr. Ugolini made application and was admitted to the United States Public Health Service Hospital where he was treated for approximately 30 days as an in-patient, and thereafter as an out-patient.

This action was instituted by Mr. Ugolini, under the provisions of the general maritime law and the Jones Act, to recover damages for an alleged aggravation of his heart condition caused by the alleged negligent treatment of Mr. Ugolini while on board the ship and after his release from the Sacred Heart Hospital at Acapulco, Mexico. He did not claim damages for the heart attack, but for aggravation only. Mr. Ugolini also sought compensation for maintenance and cure at the rate of $8 a day, commencing with

the day of his release from the hospital in Seattle and ending when he was cured as far as possible, alleging further that he is now incapacitated for work. States Marine Lines denied liability.

The cause was tried to a jury, which returned a verdict for plaintiff in the sum of $45,500 for breach of the obligation to provide care, and $3,280 for maintenance and cure.

From the judgment entered on the verdict, States Marine Lines has appealed.

The appellant's first two assignments of error are directed to the court's failure to dismiss the respondent's cause of action on the grounds (1) that the respondent failed to prove a prima facie case of negligence, and (2) that respondent failed to establish a causal relationship between the alleged negligent acts and his alleged aggravated heart condition.

■ A motion to dismiss involves no element of discretion. The evidence and all inferences therefrom must be viewed in the light most favorable to the nonmovant party. *Sullins v. Sullins*, 65 Wn.2d 283, 285, 396 P.2d 886 (1964), and cases cited. The cause should be taken from the jury only if it can be held, as a matter of law, that there is no substantial evidence to sustain a verdict in favor of the nonmovant party. *Pearsall v. Paltas*, 48 Wn.2d 78, 80, 291 P.2d 414 (1955), and cases cited.

The record before us establishes that the room in which Mr. Ugolini was placed immediately following his heart attack was small, poorly ventilated, and hot; that the ship's hospital room was available; also, that the room in the LaPlaza Hotel at Acapulco was hot; that the respondent was required to walk up and down three flights of stairs, and that his inability to communicate with others in the hotel caused anxiety. Respondent's doctor testified that this combination of circumstances constituted improper care and probably aggravated his condition. This evidence, if believed by the jury, was sufficient to establish a prima facie case of negligence.

With reference to the allegation that the respondent failed to prove a causal relationship between the alleged

negligent acts of the appellant and the alleged aggravated heart condition, the record establishes that, in the opinion of his doctor, Mr. Ugolini's condition could have been cured with proper treatment; that the treatment he received both on board the ship and in the hotel "must have had an adverse effect on his condition," and that "He would have probably less chance of returning to good health and work in view of this."

■ The rule of law in this state is settled with respect to the sufficiency of medical testimony to carry a case to the jury and support a jury verdict. In recent years, it has been repeated many times. It was clearly stated in *Orcutt v. Spokane Cy.*, 58 Wn.2d 846, 364 P.2d 1102 (1961). In that case, we held that the medical testimony as to a causal relationship between the liability-producing situation and the claimed injuries or subsequent condition must be, "that the injury 'probably' or 'more likely than not' caused the subsequent condition, rather than that the accident or injury 'might have,' 'could have,' or 'possibly did' cause the subsequent condition. *Bland v. King Cy.*, 55 Wn. (2d) 902, 342 P.(2d) 599 (1959), *Clevenger v. Fonseca*, 55 Wn. (2d) 25, 345 P. (2d) 1098 (1959)."

The trial court did not err in denying appellant's motion to dismiss.

Appellant next assigns error to the court's refusal to permit it to establish the status of its shoreside representative to be that of an independent contractor. The appellant contends that its shoreside representative was an independent contractor in charge of Mr. Ugolini from the time he was released from the hospital at Acapulco until his departure for Seattle, and that any negligence of the independent contractor that occurred during the time respondent was under his control is not chargeable to appellant, in the absence of evidence that appellant knew or should have known that the independent contractor was unqualified to perform this service.

At the time this case was appealed, the appellant's contention found support in *Hopson v. Texaco, Inc.*, 351 F.2d 415 (1965). The federal district court in that case held that

the owner was not liable for the death of one seaman and injuries to another which resulted from an accident which occurred when they were passengers in a taxicab hired by the owner. However, the case was reversed by the Supreme Court of the United States, in *Hopson v. Texaco, Inc.*, 383 U.S. 262, 15 L. Ed. 2d 740, 86 Sup. Ct. 765 (1966), which determines the question presented adversely to the contention of the appellant.

■ The two seamen in that case became ill on a ship docked at Pointe-a-Pierre on the island of Trinidad, and it was determined that they would be unable to continue the voyage. The applicable federal law required that they be taken to a United States Consul so that arrangements for their return to the United States could be made. The owner of the ship hired a taxicab to take them 38 miles to the nearest consul's office. Due to the negligence of the driver, an accident occurred, in which one of the seamen was killed and the other seriously injured. In holding the shipowner liable, the Supreme Court said:

> The Jones Act [46 U.S.C. § 688 (1964)] incorporates the standards of the Federal Employers' Liability Act, as amended, [53 Stat. 1404, 45 U.S.C. § 51 *et seq.* (1964)] which renders an employer liable for the injuries negligently inflicted on its employees by its "officers, agents, or employees." [45 U.S.C. § 51 (1964)] We noted in *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, that the latter Act was "an avowed departure from the rules of the common law" (*id.*, at 329), which, recognizing "[t]he cost of human injury, an inescapable expense of railroading," undertook to "adjust that expense equitably between the worker and the carrier." *Ibid.* In order to give "an accommodating scope . . . to the word 'agents'" (*id.*, at 330-331), we concluded that "when [an] . . . employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA." (*Id.*, at 331-332).

We think those principles apply with equal force here. These seamen were in the service of the ship and the ill-fated journey to Port of Spain was a vital part of the ship's total operations. The ship could not sail with these two men, nor could it lawfully discharge them without

taking them to the United States Consul. Indeed, to have abondoned them would have breached the statutory duty to arrange for their return to the United States. Getting these two ill seamen to the United State's Consul's office was, therefore, the duty of respondent. And it was respondent—not the seamen—which selected, as it had done many times before, the taxi service. Respondent —the law says— should bear the responsibility for the negligence of the driver which it chose. This is so because, as we said in *Sinkler,* "justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered." 356 U.S., at 330.

Just as the shipowner chose the taxicab in that case, the appellant chose the shoreside agent to perform one of its operational duties, and was liable to the respondent for his negligence in the performance thereof.

The appellant also complains that the verdict was excessive, that the jury must have disregarded the instructions of the trial court and awarded damages for the heart attack as well as for aggravation. There was evidence on which the jury could find that, had the appellant been given a proper environment immediately after the attack and again after his release from the hospital at Acapulco, he would have made a sufficient recovery to have again engaged in gainful employment. There was also evidence that, as a consequence of the aggravation of his condition, he was totally disabled. Accepting this evidence as true, and taking into account the respondent's anticipated earnings, the jury could find that his loss of earnings alone, due to aggravation, exceeded $30,000. There was substantial evidence of pain and suffering due to aggravation. It cannot be said that the award of $45,000 was without support in the evidence. It is not proper, therefore, for this court to interfere with the verdict. *Reynolds v. Donoho,* 39 Wn.2d 451, 236 P.2d 552 (1951).

The judgment is affirmed.

FINLEY, C. J., HILL, DONWORTH, WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.