[No. 464-41348-1.    Division One—Panel 1.    March 8, 1971.]

KARL CARPENTER *et al., Respondents,* v. BEST'S APPAREL, INC., *Appellant.*

440

*Lane, Powell, Moss & Miller,* and *David C. Lycette,* for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long* and *William L. Parker,* for respondents.

UTTER, J.—Lottie Carpenter brought an action for loss of hair allegedly occurring after she visited a beauty salon located at Best's Apparel. She claimed to have suffered an adverse reaction to application of a cold permanent wave solution and received a jury verdict in her favor. The cause was submitted on the theory of breach of implied warranties.

Best's appeals and raises four questions, concerning (1) the trial court's ruling that the Uniform Sales Act applied to the transaction between the parties; (2) the sufficiency of medical testimony on the issue of causation; (3) the sufficiency of proof showing the cold wave solution contained a harmful ingredient; and (4) the alleged error committed by the court's failure to inform the jury it was necessary for the defendant to have been aware or been made aware, by a reasonable inspection, there was a harmful ingredient in their permanent wave solution.

We hold the trial court did not err in its rulings and affirm the verdict for the plaintiff.

■ Best's raised the issue of application of the Uniform Sales Act by appropriate motions to dismiss at the close of the plaintiff's case, at the close of all the evidence, and by motion for judgment n.o.v. or, in the alternative, for a new trial. In ruling upon these motions, the court is required to consider only the evidence favorable to the nonmovant together with the inferences therefrom, construed most favorably to the nonmovant. *Hellriegel v. Tholl*, 69 Wn.2d 97, 417 P.2d 362 (1966); *Hall v. Puget Sound Bridge & Dry Dock Co.*, 66 Wn.2d 442, 403 P.2d 41 (1965); *Bearden v. Estate of Chisholm*, 3 Wn. App. 454, 476 P.2d 127 (1970).

The evidence, when considered from this viewpoint, establishes before Mrs. Carpenter's entry into Best's beauty salon she was, at the age of 54, in good health. Prior to entering Best's, she read their advertisement offering a $25 cold wave permanent for $15. Mrs. Carpenter, who was herself a beautician, was tended by a licensed cosmetologist, and there is evidence she was given a "halo style" permanent. This particular style involves application of permanent wave solution in a circular fashion to the area around but not including the crown of the head.

Prior to receiving this permanent wave, Mrs. Carpenter had healthy hair, and had never experienced any allergies, rashes, or skin or hair problems of any kind. During the course of the permanent wave, which lasted approximately 2½ hours, she did not notice or feel anything unusual. The process consisted of washing her hair and cutting it. Permanent wave solution was applied as the hair was rolled. After the hair and solution had stood, neutralizing solution was applied and then rinsed out. Her hair was then styled, dried and combed out, thus completing the process. The cost of the solution was approximately $2 and the remaining $13 was paid for shampooing, applying solution, and styling the hair. The manufacturer of the permanent wave solution, Duart Manufacturing Company, is not a party to this lawsuit.

After returning home from the beauty salon, Mrs. Carpenter brushed her hair and much of it fell into the brush. The loss of hair continued and all efforts following that time to restore it to natural growth were unsuccessful. The evidence, consisting of photographs submitted during the trial and her appearance at trial, demonstrated a loss of hair in the precise areas she testified the permanent wave solution was applied. The resulting effect was to leave the crown of her head, where the wave solution was not applied, untouched, with a circular ring around the complete top of the head, leaving an area of sparse hair growth resembling what has at times been referred to as a "mohawk" style haircut sometimes given to young men.

■ The transaction which gave rise to the lawsuit occurred prior to the adoption in our state of the Uniform Commercial Code, and is therefore governed by the Uniform Sales Act. A prerequisite to the application of the Uniform Sales Act provisions creating a breach of an implied warranty of fitness for use or merchantability, codified as RCW 63.04.160, is the existence of a sale of goods as opposed to the performance of a service. RCW 63.04.020(2) defines a sale of goods as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." If the contract between the parties is for services as distinguished from goods, the transaction would not come within the terms of the Uniform Sales Act. *Gile v. Kennewick Pub. Hosp. Dist.*, 48 Wn.2d 774, 296 P.2d 662, 59 A.L.R.2d 761 (1956); *Boyle v. King County*, 46 Wn.2d 428, 282 P.2d 261 (1955).

■ In permanent wave operations, the product is taken into consideration in fixing the price of the service. The argument there was no separate charge for the permanent wave solution puts excessive emphasis on the form and downgrades the overall substance of the transaction. The court, in *Newmark v. Gimbel's Inc.*, 54 N.J. 585, 258 A.2d 697 (1969), a case factually identical to this one, held the transaction is a hybrid partaking of both a sale and a service and is partly the rendering of a service and partly

the supplying of goods for consideration. The court there concluded a sale for purposes of imposition of a warranty of fitness existed and we so hold here.

Our court in *Gile v. Kennewick Pub. Hosp. Dist., supra,* quoting from *Perlmutter v. Beth David Hosp.,* 308 N.Y. 100, 123 N.E.2d 792 (1954), held where a patient sought to fasten liability on a hospital for supplying an improper type of blood during a transfusion, "that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act." We are not persuaded the reasoning in the *Gile* case should be extended to the present fact situation. Viewing the evidence in the light most favorable to plaintiff, we cannot say that either part of the transaction predominated over the other.

The holding in the *Gile* case that the supplying of blood by the hospital was not a sale was predicated on the fact that supplying blood was entirely subordinate to the hospital's permanent function of providing trained personnel and special facilities.

The facts in the present case support a conclusion that the permanent wave solution is a basic part of the transaction.

Best's challenge to the sufficiency of the evidence to support the causal relationship between the alleged breach of warranty and the injury is based on an answer to a hypothetical question propounded on their cross-examination of Mrs. Carpenter's medical expert concerning the issue of causation. Her doctor replied "there is some direct correlation then between the chemical application—whatever it might be—and the hair loss."

■■ Where recovery is sought for physical conditions allegedly resulting from injuries inflicted by the wrongful act of the defendant, the plaintiff must produce with reasonable certainty evidence to establish a causal relationship between the injury and the subsequent condition, so the jury will not be indulging in speculation and conjecture in passing upon the issue. This causal relationship

may be established by circumstantial evidence. Where it is not so established, medical testimony must at least be that the injury "probably" or "more likely than not" caused the condition rather than that the accident or injury "might have," "could have," or "possibly did" cause the subsequent condition. *O'Donoghue v. Riggs*, 73 Wn.2d 814, 440 P.2d 823 (1968); *Ugolini v. States Marine Lines*, 71 Wn.2d 404, 429 P.2d 213 (1967); *Orcutt v. Spokane County*, 58 Wn.2d 846, 364 P.2d 1102 (1961).

The causal relationship was established in this case by both direct and circumstantial evidence. The circumstantial evidence, viewed in a light most favorable to the plaintiff established Mrs. Carpenter's loss of hair started to occur almost immediately after the application of the permanent wave and occurred only on that area of her head where permanent wave solution had been applied.

There is, as well, evidence in the record on numerous occasions where the plaintiff's medical witness did testify to causation with the degree of certainty required by *Orcutt*. The failure of the doctor to testify at all times in a manner specified by *Orcutt* does not invalidate the other portions of his testimony where his answers were phrased in the requisite terms. The arguable conflict in testimony went to the question of the weight to be given the testimony rather than its admissibility.

Appellant's third contention is that Mrs. Carpenter failed to show the cold wave product used contained a harmful ingredient. Instruction No. 10, to which no exception was taken, told the jury the plaintiff had the burden of proving by a fair preponderance of evidence each of the following: (1) The product contains a harmful ingredient or ingredients, (2) such ingredient or ingredients are harmful to a reasonably foreseeable and appreciable class or number of potential users of the product, and (3) the buyer has been innocently injured in the use of the product in the manner and for the purposes intended. *Esborg v. Bailey Drug Co.*, 61 Wn.2d 347, 378 P.2d 298 (1963).

Best's does not dispute the adequacy of Mrs. Carpenter's proof on the second and third elements of the rule established in *Esborg*. They do urge that inasmuch as there was no showing what chemical ingredients were in the permanent wave solution used, there was a failure of proof on the issue of harmfulness of the ingredients.

The jury was instructed they could consider both circumstantial and direct evidence and that one kind of evidence was not necessarily more or less valuable than the other.[1] No exception was taken to this instruction and it applied to all issues. Where no exception is taken to an instruction it becomes the law of the case and Best's may not now complain that circumstantial evidence was used to establish the element of harmfulness of an ingredient. *O'Brien v. Artz*, 74 Wn.2d 558, 445 P.2d 632 (1968).

Assuming the question of proof by circumstantial evidence of the harmful nature of an ingredient had been properly before us, we still believe the trial court acted properly. The court in *Patterson v. George H. Weyer, Inc.*, 189 Kan. 501, 505, 370 P.2d 116 (1962) considered the question of the degree of proof necessary to establish a product is "deleterious." That case involved damage to the scalp of a patron of a beauty salon by application of a permanent wave solution. On the issue of breach of implied warranty of fitness against the owner of the salon, the court rejected the contention that the injured party needed to prove the deleterious quality of the permanent wave solution by a chemical analysis. The court stated:

> It was not incumbent upon the plaintiff to produce a chemical analysis of the product or medical testimony showing it poisonous or deleterious when the application of it to her hair and scalp was followed by symptoms

---

[1]"Evidence is of two kinds—direct and circumstantial. Direct evidence is that given by a witness who testifies directly of his own knowledge concerning facts to be proved. Circumstantial evidence consists of proof of facts or circumstances which according to the common experience of mankind give rise to reasonable inference of the truth of the fact sought to be proved.

"One kind of evidence is not necessarily more or less valuable than the other." Instruction No. 4.

from which the simple, reasonable and common-sense inference could be drawn by the jury that plaintiff suffered injury, though not permanent, as a direct result of the application of the permanent wave.

The testimony of Mrs. Carpenter's medical expert, which we must view in a light favorable to Mrs. Carpenter for the purpose of Best's motion, establishes that her hair was damaged by chemicals used in the cold wave and that chemicals contained in all cold wave products are harmful in the sense of being potentially dangerous if their concentration is improper.

The jury was entitled to find the product contained a harmful ingredient from either the doctor's testimony or the circumstantial evidence of loss of hair, shortly after the completion of the permanent wave, in the precise area where the solution had been applied.

Best's urges our case of *Williams v. S. H. Kress & Co.,* 48 Wn.2d 88, 291 P.2d 662 (1955) supports their position that circumstantial evidence may not be used. In that case, the plaintiff swallowed mouthwash and became ill shortly thereafter. The evidence there was that the ingredients of the mouthwash were wholesome, that proper safeguards were used in its manufacture, and that the specific batch from which the bottle came was wholesome. The court held, considering this testimony, that the plaintiff did not sustain her burden of proof by merely establishing the swallowing of the mouthwash and a later illness. The court cited *Geisness v. Scow Bay Packing Co.,* 16 Wn.2d 1, 132 P.2d 740 (1942), a food poisoning case, where the court held, "The unwholesome character of food is not established, nor is a *prima facie* case made, merely by showing that the plaintiff became sick after eating it."

The mouthwash, the subject of the *Kress* case, and the food, the subject of the *Scow Bay* case, are vastly different in character from the chemicals used in the cold wave process. There was no testimony that either the mouthwash or food had potentially dangerous chemical ingredients which could cause harm to a user. In the instant case, there

was medical testimony that "there are chemicals in hair products, and if the concentration and so forth is not proper, they can be dangerous, . . ."

■ Appellant's final contention that the plaintiff had the burden of proving that the defendant was aware of, or by reasonable inspection, could have been aware of latent defects is answered by our court's holding in *Ringstad v. I. Magnin & Co.*, 39 Wn.2d 923, 239 P.2d 848 (1952) and *Smith v. Frontier, Inc.*, 53 Wn.2d 805, 337 P.2d 299 (1959). The implied warranty of fitness, as noted in *Smith,* is imposed by the law and applied to latent defects as well as known defects. This is in the interest of both protecting buyers who have relied on the seller's judgment and of improving market conditions. Unless otherwise agreed by the parties, the risk of latent defects affecting suitability should properly rest on the seller rather than on the buyer.

The judgment of the trial court is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.