6 Wn. App. 172 (1971)
492 P.2d 246
DAVID REILLY et al., Appellants,
v.
KING COUNTY CENTRAL BLOOD BANK, INC., Respondent.
No. 1033-1.
The Court of Appeals of Washington, Division One  Panel 1.
December 20, 1971.
Wendells, Froelich & Power and Alan L. Froelich, for appellants.
Williams, Lanza, Kastner & Gibbs and Daniel E. Tolfree, for respondent.
WILLIAMS, J.
In this action plaintiffs, David Reilly and Janet Reilly, his wife, sought to recover damages resulting from an attack of hepatitis which the wife allegedly suffered because of transfusions of blood furnished by defendant, King County Central Blood Bank, Inc. Plaintiffs appeal from a summary judgment dismissing their action.
Considering the evidence in a light most favorable to appellants, as we must, the facts are that appellant wife, while recovering from surgery in a hospital in King County, received transfusions of several pints of blood supplied by respondent. About 1 month later she became ill with hepatitis.
For many years prior to the incident, respondent, a nonprofit corporation, operated a blood bank to supply blood to all who needed it in King County. Donors to the bank received no monetary compensation. The function of respondent was to draw the blood into sterile bags, type and store it, crossmatch it with a potential recipient's blood, and *173 then deliver it to the patient's hospital. For this activity respondent, at the time of the transfusions in question, was charging patients a fee of $10.50 and a "replacement guarantee fee in the amount of $25.00" for each unit. Uniformly, if the recipient arranged for donors to replace the blood used, the replacement fee was canceled.
Although some hepatitis virus-detection procedures have been developed, counsel have agreed that it is nearly impossible to guard against the virus. Accordingly, by agreement of the parties, any question of respondent's negligence was removed from the case, and appellants proceeded upon the theory of strict liability as stated in the Restatement (Second) of Torts § 402A (1965), which reads as follows:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
This section of the Restatement was approved in Ulmer v. Ford Motor Co., 75 Wn.2d 522, 452 P.2d 729 (1969), as applied to automobiles, and Carpenter v. Best's Apparel, Inc., 4 Wn. App. 439, 481 P.2d 924 (1971), as applied to a permanent-wave solution used during a permanent-wave process. The Restatement rule places liability upon the producer, despite lack of negligence, on the theory that of two innocent parties, the producer is more able to provide for the loss than the individual who is damaged. As was said in Cunningham v. MacNeal Memorial Hosp., 47 Ill.2d 443, 266 N.E.2d 897, 904 (1970):

*174 The concept of strict liability in tort logically, and we think, reasonably, dictates that an entity which distributes a defective product for human consumption, whether for profit or not, should legally bear the consequences of injury caused thereby, rather than allowing such loss to fall upon the individual consumer who is entirely without fault.
See also, Hoffman v. Misericordia Hosp., 439 Pa. 501, 267 A.2d 867 (1970); Community Blood Bank, Inc. v. Russell, 196 So.2d 115 (Fla. 1967).
Respondent's position, based upon Gile v. Kennewick Pub. Hosp. Dist., 48 Wn.2d 774, 296 P.2d 662, 59 A.L.R.2d 761 (1956), is that the blood which was supplied to appellant wife came to her as a service, not a sale, and therefore the transaction does not fall within the strict liability rule. It is true that in Gile the court, relying upon Perlmutter v. Beth David Hosp., 308 N.Y. 100, 123 N.E.2d 792 (1954), stated that a patient is not in a hospital for the purpose of purchasing materials, including blood, but rather to secure medical services. However, this observation was not necessary to the decision.
The facts in Gile v. Kennewick Pub. Hosp. Dist., supra, are that the blood transfused was taken, processed, and injected by the staff within the hospital. Although the blood was not impure, in some manner the defendant hospital personnel mismatched the blood, causing death to the recipient. In the summary portion of the opinion, the court said at page 782:
It is, of course, not necessary to prove negligence to prove a breach of warranty. However, when negligence is clearly the proximate cause of the injuries for which damages are sought, a defendant's statutory immunity against liability for that negligence should bar recovery even though the negligence has also resulted in a breach of warranty.
The court then held that in view of the fact that the hospital district's negligence was a proximate cause of the death, the immunity from tort claims then available to a nonprofit *175 hospital barred the action. RCW 70.44.060(8) (Laws of 1949, ch. 197, § 18(h), p. 603 (expired 1967)).
[1] The transaction in this case has all the attributes of a sale. There was a transfer of property through the mutual consent of competent parties for a consideration in money paid, or to be paid. RCW 62A.2-106, Ratigan v. United States, 88 F.2d 919 (9th Cir.1937), cert. denied, 301 U.S. 705, 81 L.Ed. 1359, 57 S.Ct. 938 (1937). If the operation of respondent in extracting, typing, bottling, storing, matching, delivering, and charging money for blood is characterized as a service, it is only for the purpose of avoiding the strict liability rule approved in Ulmer v. Ford Motor Co., supra, and Carpenter v. Best's Apparel, Inc., supra. We believe it both unrealistic and unfair to make such a characterization.
There is one other matter which should be discussed. In 1971 the legislature declared it to be the public policy of the state that under certain circumstances the blood used in transfusions in humans is not to be covered by any implied warranty under the Uniform Commercial Code, RCW 62A, or otherwise. By its terms, this legislation does not apply to transfusions occurring before the effective date of the act, which is the situation in this case. Laws of 1971, ch. 56, § 1.
The judgment is reversed and the cause remanded for trial.
HOROWITZ, C.J., and UTTER, J., concur.
Petition for rehearing denied January 31, 1972.