## Ellibee v. Dye

*John C. Reed*, for plaintiffs.
*W. Allen Dill*, for defendants.

ACKER, J., December 4, 1973.—This matter arises from a demurrer to a complaint in assumpsit and trespass. There it is alleged that on May 2, 1972, defendant, through an employe, gave a permanent for a fee to the hair of wife-plaintiff by applying "French Perm." Shortly after the treatment, wife-plaintiff's hair began to fall out when washing was done by one of defendant's employes. It is alleged that the "French Perm" was defective and unreasonably dangerous to plaintiff, and, as a result of which, she suffered certain injuries for which suit is now filed. Although not specifically alleged, it would appear that the first cause of action of wife-plaintiff is based on Restatement 2d, Torts, §402A. The second cause of action in trespass is that of husband-plaintiff and is, therefore, derivative. The third cause of action is in trespass alleging specific acts of negligence and is not the subject of this demurrer. The fourth cause of action is in assumpsit. It is based on an alleged breach of implied warranty of fitness for the particular purpose for which the material was

intended; and an implied warranty of merchantability in that the product was unmerchantable and defective. The fifth cause of action which is subject to the demurrer is again derivative by husband–plaintiff. At oral argument and by brief, defendant raises the sole issue of whether there was a sale of the product under Restatement 2d, Torts, §402A. However, because the question of warranty is so intimately related to §402A as to principles of law and economic concepts of loss, they are both dealt with herein.

The starting point is Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A. 2d 867 (1970). Indeed, Hoffman could be dispositive of this case. There, also, a demurrer was filed to a complaint in an assumpsit action claiming breach of implied warranty of merchantability and/or fitness for implied warranty of fitness for a particular purpose. The action was for death caused by a transfusion of blood containing hepatitis virus. The claim was that there was no sale. The lower court sustained the demurrer. This was reversed on appeal and remanded with appropriate language applicable to the case at bar, at page 507:

"We therefore do not feel obligated to hinge any resolution of the very important issue here raised on the technical existence of a sale. In this respect, we agree with the following statement made by a court of a sister state: 'It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision.': Russell v. Community Blood Bank, Inc., 185 So. 2d 749, 752 (Fla. Ct. App. 1966). In view of our case law implying warranties in non-sales transactions, it cannot be said with certainty that no recovery is permissible with the claim here made, even if it

should ultimately be determined that the transfer of blood from hospital for transfusion into a patient is a service."

By footnote 11, page 507, the court quotes Comment 2 to section 2-313 of the Uniform Commercial Code to the effect that the warranty section was not designed in any way to disturb that line of case law growth which has recognized that warranties need not be confined either to sale or contract or to the direct parties to such contract.[1]

Consideration of hospital, doctor, dentist and other medical service cases brings confusing results because of the desire of the courts to protect those who are rendering health and life saving services to the public. Various approaches have been used. A case strongly relied upon by defendant is Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E. 2d 792 (1954), which

---

[1] This court previously passed upon a related issue in Frank v. J. C. Penney Company, 10 Mercer 244 (1970). There, a treatment was given by an employe of defendant using products of Helene Curtis Industries consisting of Revive Shampoo, Finesse Conditioning and Waving Lotion, Finesse Creme Neutralizers, Setting Lotion and Setting Jell which allegedly resulted in injury. Restatement 2d, Torts, §402A was the basis of the suit. Defendant did not claim, as here, that there was no sale, but did request a more specific pleading to allege specific acts of negligence. This was denied saying, page 245: "The plaintiff-customer came to the defendant for application of materials to her hair. She had a right to assume that it would be properly applied and would be of proper substance for the purpose for which it was intended to be used . . . Obviously the defendant is in a much better position to know the exact nature and quantity of the materials upon the plaintiff's hair than she herself. Further, they are in a better position to have the nature of the products analzyed. For all practical purposes it would be impossible for the plaintiff at this late date to have a chemical analysis of the products supplied by the defendant to her which resulted in her subsequent condition."

in a four-to-three decision denied recovery against a hospital for defective blood.[2]

Illinois, contrary to the New York Court in Perlmutter, supra, held in Cunningham v. MacNeal Memorial Hospital, 47 Ill. 2d 443, 266 N.E. 2d 897 (1970), that despite the reasoning of Perlmutter, the furnishing of blood by a hospital is a sale for which absolute liability can be held whether the virus is detectable in the blood or not. Other States have resolved the matter by giving immunity to hospitals against strict liability for the furnishing of defective blood: McDaniel v. Baptist Memorial Hospital, 469 F.2d 230 (6th Cir., 1972), where a Tennessee statute was construed as being constitutional. A unique approach as to medical cases is found in Johnson v. Sears Roebuck & Co. and Columbia Hospital, 355 F.Supp. 1965 (E.D. Wisc., 1973), in holding that mechanical and administrative services provided by hospitals should not necessarily be exempt from strict liability. It was held that there is a distinction between the liability of medical personnel and the hospital itself, based on the theory that, when hospitals are furnishing appliances or services at the request of the doctor, the public and the doctor have the right to assume the services will be correctly performed or that the equipment will be in proper operating condition. On the other hand, to hold medical personnel liable would be to hamper their use of facilities, if strict liability were imposed. Therefore, the court

---

[2] This case, however, was distinguished by the New York courts in Napoli v. St. Peters Hospital of Brooklyn, 213 N. Y. 2d 6 (N. Y. Sup. Ct., 1961), which upheld a cause of action· alleging in express warranty that blood was fit for the decedent. Likewise, in Cheshire v. Southampton Hospital Association, 53 Misc. 2d 355, 278 N.Y.S. 2d 531 (1967), plaintiff was given the opportunity to prove a sale as to an intramedullary which broke in the anatomy of the plaintiff.

takes the view that each such matter must be decided on an ad hoc basis. However, as to the present issue in the case at bar, the court holds, at page 1066:

"My decision should not be based on a technical or artificial distinction between sales and services. Rather, I must determine if the policies which support the imposition of strict tort liability would be furthered by its imposition in this case. In the present context, the question is whether it is in the public interest for the consumer/patient or the supplier/hospital to bear the loss incurred by defective, though non-negligent, services."[3]

Restatement 2d, Torts §402A provides:

"One who sells any product in a defective condition . . . if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected and does reach the user or consumer without substantial change in the condition in which it is sold."

The Reporter's Notes from the American Law Institute, Restatement of the Law 2d, page 348, tracing the history of absolute liability tells us that initially such

---

[3] Other medical cases demonstrating the diversity of position are Silverhart v. Mt. Zion Hospital, 20 Cal. App. 3rd 1022, 1027, 98 Cal. Rptr. 187, 190 (1971), which held there was no liability for the breaking of a surgical needle by a hospital during the course of an operation; Magrine v. Krasnica, 94 N. J. Super. 228, 227 A. 2d 539 (1967), affirmed sub. nom. Magrine v. Spector, 100 N. J. 223, 241 A. 2d 637 (1968), where liability was denied against a dentist who used a drill which broke in the course of operation. The court held that there was not a sale and analogized that the same principle of liability would have to be applied to any physician, artisan or mechanic or even to the driver of a defective vehicle if this were to be regarded as a sale. On the other hand, strict liability was held against a blood bank for the sale of defective blood in Reilly v. King County Central Blood Bank, Inc., 6 Wash. App. 172, 492 2d 246, 247 (1971).

liability was imposed upon purveyors of food. The first extension was the closely analogous cases of other products intended for intimate bodily use "[w]here, for example, as in the case of cosmetics, the application to the body of the consumer is external rather than internal."

Whether the warranty is alleged to be express[4] or implied[5] the rights arise from a contract for their sale.

The position of defendant is that there is no sale either within the terms of Restatement 2d, Torts, §402A or the Uniform Sales Act. However, Hoffman, supra, appear to the contrary, page 507:

"We therefore do not feel obligated to hinge any resolution of the very important issue here raised on the technical existence of a sale."

California has recognized that an implied warranty may be found even though the contract is for labor and materials rather than a sale: Aced v. Hobbs-Sesack Plumbing Co., 360 P. 2d 897 (Supreme Court of California, 1961). There, the court concluded that the contract was one for labor and materials but that, nevertheless, there may be an implied warranty.

Although there is a conflict in jursidictions as to whether the furnishings of materials by a beautician constitute a sale,[6] a well-reasoned opinion holding a sale is Newmark v. Gimbel's, Inc., 102 N. J. Super. 279, 246 A. 2d 11 (1968). There, plaintiff, at defendant's establishment, secured a permanent wave, the type being at the suggestion of defendant's representative. Certain injuries were alleged to have re-

---

[4] Uniform Commercial Code of October 2, 1959, P. L. 1023, sec. 2, 12-A. PS §2-313.

[5] Act of October 2, 1959, P. L. 1023, sec. 2, 12-A PS §314.

[6] Epstein v. Giannattasio, 25 Conn. Super. 109, 197 A. 2d 342 (1963), that there is no sale, but Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 2d 413 (1954), held that there was a sale.

sulted. The lower court had concluded that it was merely a transaction between parties amounting to a rendition of services rather than the sale of a product. The appellate court reversed concluding that there was no good reason for restricting warranties to sales. Where one person supplies a product to another, whether or not the transaction be technically considered a sale, warranties should be applicable. The court stated, Newmark v. Gimbel's, Inc., supra, at page 15:

"Weighing the foregoing policy considerations, we are satisfied and hold that, stripped of its nonessentials, the transaction here in question, consisting of the supplying of a product for use in the administration of a permanent wave to plaintiff, carried with it an implied warranty that the product used was reasonably fit for the purpose for which it was to be used."

The policy reasons were that the risk from use of the lotion was incident to the operation of defendant's business. A business which yielded it a profit and placed it in a position to promote safety through pressure on suppliers. Defendant was in a position to protect itself by making inquiry or to test to determine the susceptibility of customers to the use of the product by using another lotion which did not present the possibilities of an adverse effect. The fact that there was no separate charge for the product did not preclude it being considered as having been supplied to the customer in a sense justifying the imposition of the implied warranty against injurious defects. Perlmutter v. Beth David Hospital case, supra, used by defendant in the case at bar, was likewise cited and distinguished on policy reasons in favor of hospitals.

The trend in Pennsylvania law has been to extend warranties in new directions and for situations previously denied. Most recently in Salvador v. Atlantic Steel Boiler Co., 224 Pa. Superior Ct. 377, 307 A. 2d 398 (1973), horizontal privity was eliminated under the rationale that because suits formerly in assumpsit can now be maintained under Restatement 2d, Torts, §402A, privity should no longer be required whether the action be in assumpsit or trespass. Previously, horizontal privity was eliminated in Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968). In Elderkin et ux. v. Gaster, 447 Pa. 118, 288 A. 2d 771 (1972), implied warranties were held to be applicable to a builder-vendor who sells new houses in a development and requires that the purchaser have the vendor as his contractor for the erection of the home. There, it was held that the contractor-vendor impliedly warranted that the residence would be habitable and that the failure to provide potable water could be a breach of that warranty. Therefore, it appears that the trend in Pennsylvania is to further extension of warranties and the application of Restatement 2d, Torts, §402A.

This court is of the opinion that accepting the facts of plaintiff as true, as it is required to do at this posture of the case, the supplying of the product was a vital part of the performance of the service. Without the product, the service could not have been successfully accomplished. This was contemplated by all parties. The cost of the service must necessarily have included the cost of the product. If a supplier of a product over the counter would be liable to plaintiff under either a Restatement or warranty theory, certainly in logic and reason a beauty shop operator, who has the opportunity to examine the product as it is being.

applied and to be assured that it is properly applied, should be held responsible if the product is defective. Plaintiffs in the case at bar must be given the opportunity to prove their case. They may do so under a theory of absolute liability, breach of warranty or negligence or all three or a combination thereof at the trial.

Wherefore, the demurrer of defendant is denied.

## ORDER

And now, this December 4, 1973, it is hereby ordered and decreed that the demurrer to the complaint is denied in its entirety.