[No. 51128–4. En Banc. March 28, 1985.]

JOHN F. GARVEY, JR., *Appellant,* v. ST. ELIZABETH HOSPITAL, *Respondent.*

*Critchlow & Williams,* by *Kenneth J. Pedersen,* for appellant.

*West H. Campbell* and *J. Tappan Menard* (of *Gavin, Robinson, Kendrick, Redman & Pratt, Inc., P.S.),* for respondent.

DOLLIVER, C.J.—During his quadruple coronary artery bypass surgery at defendant St. Elizabeth Hospital, plaintiff received the transfusion of 12 units of blood. About 1 month later, plaintiff became ill with chronic active non–A, non–B viral hepatitis which he alleges was contracted from the blood used in the transfusions. The blood in question was furnished without charge by the Red Cross Blood Bank of Yakima.

Plaintiff commenced this action against the hospital alleging negligence, strict liability, and breach of implied warranty of fitness. On the day of trial, plaintiff moved for and was granted a voluntary nonsuit on the negligence cause of action. Defendant moved for and the trial court granted summary judgment on the other causes of action. The trial court held defendant was immune from liability under RCW 70.54.120. Alternatively, the court held the furnishing of the blood by defendant was a "service" and not a "sale" and there was no strict liability or breach of implied warranty. Since RCW 70.54.120 is dispositive, we will not discuss the alternative grounds for the summary judgment.

RCW 70.54.120, which provides immunity from implied warranty and civil liability to those who provide blood, is as follows:

> The procurement, processing, storage, distribution, administration, or use of whole blood, plasma, blood products and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human

body is declared to be, for all purposes whatsoever, the rendition of a service by each and every person, firm, or corporation participating therein, and is declared not to be covered by any implied warranty under the Uniform Commercial Code, Title 62A RCW, or otherwise, and no civil liability shall be incurred as a result of any of such acts, except in the case of wilful or negligent conduct: *Provided, however,* That this section shall apply only to liability alleged in the contraction of hepatitis and malaria and shall not apply to any transaction in which the blood donor receives compensation: *Provided further, That this section shall only apply where the person, firm or corporation rendering the above service shall have maintained records of donor suitability and donor identification* similar to those specified in sections 73.301 and 73.302(e) as now written or hereafter amended in Title 42, Public Health Service Regulations adopted pursuant to the Public Health Service Act, 42 U.S.C. 262: *Provided further,* That nothing in this section shall be considered by the courts in determining or applying the law to any blood transfusion occurring before June 10, 1971 and the court shall decide such case as though this section had not been passed.

(Italics ours.)

Plaintiff argues the statute does not apply since defendant did not maintain records of donor suitability and donor identification. It is undisputed, however, that the American Red Cross, which initially supplied the blood, maintained proper records of donor identification and suitability and fully complied with the statute. This being so, defendant argues there is no need for it to keep duplicate records. We agree with defendant.

RCW 70.54.120 appears to have been a legislative response to *Reilly v. King Cy. Cent. Blood Bank, Inc.,* 6 Wn. App. 172, 492 P.2d 246 (1971) in which the court held that a blood bank furnishing defective blood could be liable to the transfusee under theories of strict liability and implied warranty. The overwhelming majority of states have blood immunity statutes. *See* Comment, *Blood Transfusions and the Transmission of Serum Hepatitis: The Need for Statutory Reform,* 24 Am. U. L. Rev. 367,

404 n.143 (1975). The public policy represented by these statutes is not difficult to discern: blood transfusions are essential in the medical area and there are not now, and realistically there may never be, tests which can guarantee with absolute certainty that the donated blood is uncontaminated with certain viruses. Comment, 24 Am. U. L. Rev. at 368.

 The general rule in interpreting statutes containing provisos has been stated as follows:

> [A] proviso in a statute must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith. Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions.

(Citations omitted.) *State v. Wright,* 84 Wn.2d 645, 652, 529 P.2d 453 (1974). The express broad purpose of the statute is to exonerate providers of blood from liability under strict liability and warranty theories; the statute does not immunize liability for negligence claims. The purpose of the proviso is to ensure that blood suppliers claiming immunity possess and maintain donor records so that doctors transfusing blood into their patients may check the donors' records.

Plaintiff does not allege the blood bank failed to maintain adequate donor suitability records; he only argues the records must be maintained by the hospital itself. While this could have been done by the hospital, plaintiff has not rebutted defendant's assertion that the testing, labeling, and information procedures of the blood bank were adequate. Plaintiff, moreover, has not demonstrated failure of the hospital to keep its own records prevented him from receiving the same donor information he would have received had the hospital done so. We decline to hold a hospital or any other entity which processes, stores, distributes, administers or uses "blood" must maintain dupli-

cate records. Although an overly technical reading of the statute might seem to require duplication of records, such an interpretation would be expensive, unnecessary, and inconsistent with the legislative intent.

Plaintiff's argument is even less persuasive in view of the fact that the strain of hepatitis he allegedly contracted from the blood transfusion would not appear even in a blood test. It would not further the purpose of the statute—immunity from strict liability—to so construe the proviso as to hold the hospital liable. The supplier of blood kept records in conformity with the statute. This is sufficient to provide immunity to the hospital.

Affirmed.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.