Betty S. RACER and David Racer, Plaintiffs-Cross-Appellants,

v.

Dr. William F. UTTERMAN, Johnson & Johnson, Defendants-Cross-Appellants,

and

Ste. Genevieve County Memorial Hospital, Defendant-Respondent.

Nos. 42473, 42482 and 42523.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 1981.

Application to Transfer Denied Jan. 18, 1982.

John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, for plaintiffs in 42473, 42482, and appellants-respondents-plaintiffs in 42523.

V. Kenneth Rohrer, Roberts, Roberts & Rohrer, Farmington, for appellant in 42473, defendant in 42482, and Dr. William F. Utterman in 42523.

David L. Colson, Colson, Wagner & Freer, Farmington, for defendant in 42473, respondent in 42482, and Johnson & Johnson in 42523.

Robert G. Brady, Bryan, Cave, McPheeters & McRoberts, St. Louis, for appellant in 42473, respondent in 42482, and Johnson & Johnson in 42523.

J. Douglas Cassity, Cassity, Freeman, Greene & Bennett, Springfield, for appellant in 42473, defendant in 42482, and Dr. William F. Utterman in 42523.

William W. Evans, Evans & Dixon, St. Louis, for defendant in 42473, respondent in 42482, and Johnson & Johnson in 42523.

Robert Wulff, Amelung, Wulff & Willenbrock, St. Louis, for appellant in 42473, respondent in 42482, and Ste. Genevieve County Memorial Hospital in 42523.

Francis Toohey, Jr., Toohey & Moore, Perryville, for appellant in 42473 and Ste. Genevieve County Memorial Hospital in 42523.

SMITH, Judge.

This case involves three appeals arising from a judgment in a jury tried personal injury case.

Plaintiff Betty Racer underwent surgery for a dilation and curettage operation in defendant Ste. Genevieve County Memorial Hospital. Defendant William Utterman was the operating surgeon. During the course of the operation a disposable drape manufactured by defendant Johnson and Johnson caught on fire resulting in serious burns to Betty Racer. She (and her husband on a consortium claim) sued the three indicated defendants. They, in turn, filed cross-claims against each other seeking indemnity or apportionment of any damage award made. The jury found for plaintiffs against Dr. Utterman and Johnson and Johnson, and against plaintiffs in favor of the hospital. It assessed actual damages for Betty Racer of $375,000 and for David Racer of $7,500 which were apportioned by the jury at 2% against Dr. Utterman and 98% against Johnson and Johnson. It additionally awarded punitive damages against Johnson and Johnson of $500,000 in favor of Betty Racer and $17,500 in favor of David Racer. From the judgment in plaintiffs' favor, entered in accord with the jury verdict, Johnson and Johnson and Dr. Utterman have appealed. Plaintiffs have appealed from the judgment in favor of the hospital. We affirm the judgment for actual damages against Johnson and Johnson, reverse and remand the judgment for punitive damages against that defendant, reverse the judgment against Dr. Utterman, and affirm the judgment in favor of the hospital.

Although additional facts will be set forth as we deal with the various contentions raised on appeal, some discussion of the occurrence causing the injury is warranted. On April 26, 1976, Betty Racer was admitted to the hospital for an immediate D & C procedure. She was anesthetized and placed on the operating table. She was then draped with a Johnson and Johnson Lithotomy Pack II gynecological disposable surgical drape which covered her chest, abdomen, perineum, and legs, and which extended to the floor. The drape contains an opening over the vaginal area through which the surgery is performed. The area of the drape around this opening is reinforced with additional layers of material. The doctor, as an added precaution against infection, also covered Betty's legs with Converter leggings, a stocking-like covering.[1] The purpose of the surgical drape is to provide a sterile field and to serve as a

---

1. American Hospital Supply Corporation, manufacturer of the Converter leggings was brought into the suit as a third party defendant, but was dismissed prior to submission of the case to the jury.

barrier to prevent bacteria from reaching the operation site. · The operation was uneventful until just prior to its conclusion. At that point the surgeon was utilizing a cautery to stop bleeding in the cervix. He was simultaneously using a $4'' \times 8''$ cotton gauze as a sponge to remove blood so he could locate the bleeding spots. This was normal and usual practice in this type of operation. The hot cautery and sponge were in close proximity and the sponge began to smolder. This also is not uncommon in this type of surgery. The doctor threw the smoldering sponge at the feet of the circulating nurse for her to extinguish. It landed on, under, or very near the surgical drape. As the nurse stepped toward the sponge almost immediately after the doctor threw it, the drape began burning. The nurse threw a pan of water on the drape, but because of the water-repellant characteristics of the drape this had no effect except to possibly intensify the fire. The fire was extinguished in approximately twenty seconds by another member of the operating room team by use of a fire extinguisher obtained from outside the operating room. The doctor and nurse, in the interim, attempted to remove the drape, which had by that time ignited the leggings covering Betty Racer's left leg. Because of the presence of the leggings and the method of the draping, they were unable to fully remove the drape.

The fire, as described by the witnesses, burned at a very nearly explosive rate. Subsequent tests, outside the operating room and in the courtroom, made of the remains of the drape and a drape from the same shipment, also revealed the highly flammable nature of the drape. All of the witnesses for the plaintiff, those present in the operating room and otherwise, testified to their prior belief that the drape was fire-resistant or fire-retardant and a medical textbook (upon which Dr. Utterman relied) containing a similar conclusion was introduced into evidence.

Johnson and Johnson has raised twelve points in its brief. We have reviewed those not hereinafter discussed and conclude that they either are mooted by our conclusions on the points discussed or involve discretionary actions of the trial court in which we find no abuse of discretion. We also do not find the verdicts excessive. We will initially deal with those points relating to the sufficiency of the evidence to support the claim for actual and/or punitive damages and the propriety of the instructions submitting those issues. We will then discuss the submissibility of plaintiffs' case against Dr. Utterman and the hospital.

### The Actual Damage Case Against Johnson and Johnson

Plaintiffs based their claim for actual damages upon Section 402A of the Restatement of Torts 2d, commonly referred to as strict liability in tort. It reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

That section was adopted as the law of this state in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo. 1969). In supporting its decision to adopt the doctrine of strict liability, the court emphasized that the purpose of the doctrine is "to insure that the costs of injuries resulting from defective products are borne by the manufacturers [and sellers] that put such products on the market rather than by

the injured persons who are powerless to protect themselves." 445 S.W.2d at 364. Section 402A premises liability on the sale of a product in a defective condition unreasonably dangerous to the user or consumer. In *Keener*, the product, a sump pump, was clearly defective as manufactured. In *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo.banc 1977), the doctrine was applied to a product which was not defectively manufactured, but which was unreasonably dangerous because of its design. *See also Cryts v. Ford Motor Co.*, 571 S.W.2d 683 (Mo.App. 1978). *Blevins* recognized the existence of the "unavoidably unsafe" product which is the subject of discussion in comment k to Sec. 402A. That comment recognizes that certain useful and desirable products are, under the present state of human knowledge, incapable of being made safe for their intended and ordinary use. "Such a product, properly prepared, *and accompanied by proper directions and warning*, is not defective nor is it *unreasonably* dangerous." (Emphasis supplied except "unreasonably") Comment k, *supra*. Comment j to 402A provides that "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use."

Based upon comment j, there has arisen a doctrine of strict liability for failure to warn. Comment k makes it apparent that the obligation to warn is applicable to "unavoidably unsafe" products. Although we have found no case in Missouri specifically dealing with this aspect of strict liability, MAI 25.05 (1978) recognizes the existence of a strict liability failure-to-warn cause of action.

Some courts have been troubled with the concept that a useful product manufactured properly and designed as safely as human knowledge makes possible which contains no warning of danger can meet the "defective condition" requirement of Sec. 402A. Some courts have simply eliminated

the requirement of defect. *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943 (Mo.App. 1970); *Caplaco One, Inc. v. Amerex Corp.*, 435 F.Supp. 1116 (E.D.Mo.1977) [2, 3] aff'd, 572 F.2d 634 (8th Cir. 1978); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968) [4]; *Hamilton v. Motor Coach Industries, Inc.*, 569 S.W.2d 571 (Tex.Civ. App.1978) [8–11]; *Little v. PPG Industries, Inc.*, 92 Wash.2d 118, 594 P.2d 911 (banc 1979) [1]. Others have concluded that such a product becomes defective because of the absence of a warning. *LeBouef v. Goodyear Tire & Rubber Co.*, 451 F.Supp. 253 (W.D.La.1978) [1, 2, 3] *aff'd*, 623 F.2d 985 (5th Cir. 1980); *Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 561 P.2d 450 (1977) [2–4]. We see no need to engage in such semantics. Comment k to the Restatement recognizes that "unavoidably unsafe" products achieve protection despite their danger "when accompanied by proper directions and warning." Otherwise they do not. We believe that the reasons for recognizing the doctrine of strict liability in tort are equally applicable to products unavoidably unsafe which carry no warning or inadequate warning of their danger. Such a position has been generally accepted by the courts of this country.

Johnson & Johnson contends that the evidence fails to establish as a matter of law that the drape is unreasonably dangerous. On the record before us we find the surgical drape here to be an "unavoidably unsafe" product. It is a highly useful product which affords substantially increased protection against infection during surgical procedures. Its water-repellant attributes increase these protections. In the state of knowledge at the time of the injury no method of making the product fire-resistant was available which did not adversely affect its barrier against infection or create potential injury to the patient from allergy or disease. It is also clear that it is highly flammable.[2] It is designed for gynecologi-

---

2. Johnson and Johnson presented evidence that its flammability was less than that shown by plaintiffs' evidence. We, of course, review the evidence most favorable to plaintiffs. Even Johnson and Johnson's expert testimony re-

cal surgery where use of a cautery is not unusual. In such a posture we conclude that the evidence supports the conclusion that liability under Sec. 402A could attach to the drape because of its flammable nature, in the absence of a warning of the danger.

■■■■ Courts have applied what purport to be two different tests of whether a product is unreasonably dangerous. One is that the product meets the criteria if the seller would be negligent if he sold the product knowing of the risk involved. The second is that set out in comment i to Sec. 402A: "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." *Seattle-First National Bank v. Tabert*, 86 Wash.2d 145, 542 P.2d 774 (banc 1975) [2]. As pointed out in *Phillips v. Kimwood Machine Company*, 269 Ore. 485, 525 P.2d 1033 (banc 1974) [1], the two tests may in fact be the same—simply different directions from which to arrive at the same result. Unless a court can say as a matter of law that the product is not unreasonably dangerous the question is one for the jury. *Phillips v. Kimwood Machine Company, supra*, [5]. We cannot say as a matter of law that this product is not "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it."

■■■■ Johnson and Johnson also contends that the absence of a warning was not the proximate cause of Betty Racer's injuries. We cannot so conclude as a matter of law. Comment j to Sec. 402A provides that [w]here warning is given, the seller may reasonably assume that it will be read and heeded . . . ." At least one court has held this language to create a presumption of causation in failure-to-warn cases. *Menard v. Newhall*, 135 Vt. 53, 373 A.2d 505 (1977) [2–4], Contra; *Potthoff v. Alms*, 583 P.2d 309 (Colo.App.1978) [2]. We need not determine whether the comment creates a presumption of causation. Certainly the converse of the comment is true—if there is no warning the manufacturer may reasonably assume that the user will neither read

nor heed it. In failure-to-warn cases generally, certainty that the existence of the warning would have prevented the injury is not required. In the absence of compelling evidence establishing that the absence of a warning did not cause the injury the causation question becomes one for the jury. *Haberly v. Reardon Company*, 319 S.W.2d 859 (Mo. banc 1958) [10, 11]; *Menard v. Newhall, supra*. There is no such compelling evidence here. There clearly was no warning of flammability on the product or on the container in which it came. The personnel responsible for the preparation of the operating room and the supplies used therein were unaware of the flammability characteristics of the product until after the fire. The doctor testified to his lack of knowledge of the drape's flammability and gave his opinion that it would not be good medical practice to use such a drape in this type of surgery knowing of its flammability. The proximate causation question was one for the jury.

Johnson and Johnson next contends that the issue of its liability for failure to warn was improperly submitted to the jury under MAI 25.05. The thrust of this argument is that the instruction does not require a finding by the jury of knowledge, actual or constructive, of the defect or dangerous condition of which a warning is required. This contention in turn relies upon certain language found in comment j to Sec. 402A:

"... Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.*" (Emphasis supplied).

The emphasized wording has caused a split of authority among courts of other

flected a burn rate comparable to newspaper     and some toilet tissue.

states. Some courts have held that that language requires a showing by the plaintiff of the manufacturer's knowledge or of his ability to obtain knowledge of the dangerous condition in strict liability failure-to-warn cases. *Woodill v. Parke Davis & Co.,* 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980) [2–4]; *Basko v. Sterling Drug, Inc.,* 416 F.2d 417 (2nd Cir. 1969) [1–6]. Other courts have simply refused to apply the language on the basis that it represents an attempt to reimpose negligence concepts upon an entirely different cause of action. *Little v. PPG Industries, supra* [2, 3]; *Phillips v. Kimwood Machine Company, supra,* [4].

█ In this state, as in most others, the courts have treated strict liability in tort as a doctrine which looks to the product not to the conduct of the manufacturer or seller. The liability arises because of the condition of the product regardless of the care exercised by the manufacturer or seller. *Blevins v. Cushman Motors, supra,* [4, 5]; *Cryts v. Ford Motor Co., supra,* [2–4]; Restatement Torts 2d, Sec. 402A(2)(a). In *Blevins v. Cushman Motors, supra,* the court pointed out that the distinction between negligence and strict liability is that in the former the duty owed is based upon the foreseeability of harm or injury from defendant's conduct while in the latter the liability arises because of the foreseeable *use* of the product, not the foreseeable *harm. See also Phillips v. Kimwood Machine Company, supra.* We are unable to see, if we accept the rationale of *Keener* and *Blevins,* why a product dangerous because of an absence of warning, should receive different treatment than a product manufactured with the greatest of care which contains a defect unknown to the manufacturer. Lawyers (which includes judges) have been steeped in the concepts of fault in personal injury tort actions and there exists a residuum of resistance to imposing liability for the failure to warn of a condition of which the party having the duty to warn is both actually and constructively unaware. At least one court, in dealing with this problem, has treated strict liability in tort as creating constructive knowledge of the defect. *Phil-*

*lips v. Kimwood Machine Company, supra,* [4]. That approach comports with established and traditional concepts of law, but we find it more useful to recognize that strict liability is not a traditional cause of action as it now exists and that knowledge, fault or conduct of the defendant is simply no longer relevant. *Cryts v. Ford Motor Co., supra,* [2–4]. Strict liability in tort imposes a duty on the manufacturer not to introduce into commerce an unreasonably dangerous product—whether that danger arises from defective manufacture, defective design, or failure to warn of danger. The breach of that duty occurs by the act of introducing such product into commerce. That is the only conduct which is relevant to the manufacturer's breach of duty.

█ At any rate, we do not find the emphasized language of comment j pertinent in this case for at least two reasons. First, by its language it appears to be limited to those products which are either ingested or placed in contact with the body and where the injury results from the interaction of the product (or an ingredient of the product) with the body itself. Normally, this would encompass drugs. If as a matter of public policy (*Davis v. Wyeth Laboratories, Inc., supra,* [4]) or as a rule of reasonableness (*Little v. PPG Industries, supra,* [3]), it is necessary to afford protection to products of this nature whose value is recognized and whose dangers are not only unknown but incapable of determination, the emphasized language can serve as a vehicle to do so. The surgical drape involved here does not meet that criteria. Secondly, we note that the language utilized goes beyond the normal rules of constructive knowledge to a point approaching, if not reaching, an impossibility of knowledge. Clearly knowledge of the flammability characteristics of the surgical drape here was not beyond "the application of reasonable developed human skill and foresight." We find no error in the submission of plaintiffs' actual damage claim.

### The Punitive Damage Claim

As to punitive damages, Johnson and Johnson first contends that strict liability in

tort and punitive damages are inconsistent theories and that punitive damages may not be awarded in a strict liability case. We do not find the theories inconsistent. In *Sharp v. Robberson*, 495 S.W.2d 394 (Mo.banc 1973), the court recognized that willful and intentional conduct is the antithesis of negligence and therefore punitive damages for the former could not be awarded in an action based on the latter. The court also recognized that certain species of negligence rising to the degree of indifference to or conscious disregard for the safety of others were not inconsistent with negligence. This was based upon the court's analysis of *Reel v. Consolidated Inv. Co.*, 236 S.W. 43 (Mo.1921). That analysis was as follows:

> "Thus, *Reel* did not require that plaintiff's actual damages be premised on conduct which would authorize punitive damages. What *Reel* did allow was for a plaintiff to obtain his actual damages based upon a jury finding of ordinary negligence and, in addition thereto, if the evidence supported the submission, to allow the award of punitive damages. *Reel* did not require as a prerequisite to the award of actual damages that the jury find the actual damages were occasioned by that degree of fault necessary to the submission of punitive damages." 495 S.W.2d at 397.

As we interpret *Sharp* and *Reel*, the plaintiff is not allowed to recover punitive damages if the conduct upon which punitive relief is sought is inconsistent with the conduct for which actual damages are sought. If, however, the theory upon which actual damages are recovered is not inconsistent with proof that a higher level of fault exists than that which supports the actual damage award, then plaintiff is entitled to seek punitive damages for that higher degree of fault. Applying *Sharp* and *Reel*, it is apparent that no inconsistency exists between recovery under strict liability and recovery of punitive damages. The only conduct required of a defendant to make him liable under strict liability is that he placed an unreasonably dangerous product into commerce. The degree of fault is immaterial to recovery under this theory— it may run from total innocence to deliberate intention to inflict harm. If plaintiff, in addition to proving the conduct necessary to support the strict liability claim, can also establish a degree of fault in such conduct sufficient to justify punitive damages, those damages may also be recovered.

The record supports such a submission here. There was evidence, not all of which we have set forth, from which a jury could have found that Johnson and Johnson placed the drape in commerce knowing and intending that it be used for surgery where a cautery would be in use; that the defendant was actually aware for several years of the flammability of its product and knew or should have known that users of the product would not be so aware; that it knew that the flammability and intensity of burning rendered the product dangerous when used in operations such as the plaintiffs'; that defendant in its selling activities represented the product to be safe for operations such as plaintiffs' and represented that the drape met governmental flammability standards which were in fact non-existent. From such findings a jury could have found an indifference to, or conscious disregard for, the safety of others sufficient to support a punitive damage award.

However, we must reverse and remand the punitive damage awards because, as Johnson and Johnson contends, the issue was not properly submitted to the jury. The matter was submitted to the jury under MAI 10.02 which authorizes an award of punitive damages if the jury found that the conduct of defendant set forth in MAI 25.05 showed complete indifference to or conscious disregard for the safety of others. The notes on use for 10.02 state that it is the appropriate instruction for exemplary damages "in connection with a claim for actual damages based on ordinary negligence . . . ." MAI 25.05 does not submit a claim for ordinary negligence for failure to warn which would include a requirement of defendant's knowledge, actual or constructive, of the danger involved and of his

negligence in failing to warn. As we have heretofore stated, the only conduct required to be submitted (and in fact submitted) under plaintiffs' strict liability theory was that it placed a dangerous product in commerce without a warning of the danger. Defendant's fault in so doing was in no way submitted to the jury in either 25.05 or 10.02, and a finding of fault sufficient to justify punishment is essential to recovery of exemplary damages. Otherwise, the jury could award punitive damages simply because it considers that an example should be made of any defendant who markets a dangerous product whether he knows of the unreasonable danger or not.

▮ Here there was evidence from which a jury could have found that, while defendant was aware that its product was flammable (virtually everything is if enough heat is applied), it was not aware of its high degree of flammability or its intensity of burning. There was evidence that the ignition potential of the drape from contact with heat sources other than flame was much less than from flame and that flame would not normally be present in an operating room, even though other heat sources might be. There was also evidence that defendant knew that the drape was to be used in a controlled environment with a crew of persons to extinguish any moderately burning fire or to remove the drape if a fire commenced. There was also evidence that the reinforced opening through which the surgery was performed was less flammable and burned with less intensity than the remainder of the drape. This is the area of the drape in which contact with the cautery would normally be anticipated. The jury could have found that while the drape was in fact unreasonably dangerous, the defendant was not aware that it was unreasonably dangerous when used as intended, and in the absence of such knowledge was not indifferent to or in conscious disregard of the safety of others in marketing the product. The failure of the instruction to include a finding of such knowledge was erroneous.

3. We need not and do not reach the effect of

*Dr. Utterman's Appeal*

Dr. Utterman contends that plaintiffs failed to make a submissible case against him because of the absence of expert testimony to establish his negligence.

Plaintiffs' original petition premised relief against Dr. Utterman upon general negligence grounds. Pursuant to an order of the court, this petition was amended to state the specific grounds of negligence against the doctor. In their amended petition, plaintiffs, while pleading specific negligence, stated that such pleading, in compliance with the court's order, "does not mean that plaintiffs abandon their original negligence pleading . . . ." [3] At trial, plaintiffs established the specific activities in the operating room which caused the burns sustained by Betty Racer. The case was submitted to the jury on the hypothesis that Dr. Utterman "discarded a smoldering and burning sponge onto a surgical drape" and was thereby negligent.

▮ Plaintiffs invoke the accepted doctrine that a patient undergoing surgery who sustains an injury to a healthy part of the body not involved in the operation establishes a case under the *res ipsa loquitur* doctrine. *Meyer v. McNutt Hospital*, 173 Cal. 156, 159 P. 436 (1916) [5]; *Oldis v. La Societe Francaise de Bienfaisance Mutuelle*, 130 Cal.App.2d 461, 279 P.2d 184 (1955) [1, 2]; *Poor Sisters of St. Francis v. Long*, 190 Tenn. 434, 230 S.W.2d 659 (1950) [3]. Betty Racer's injuries here meet the tests of that doctrine. However, it is also established that *res ipsa loquitur* creates a presumption or inference of negligence, and where plaintiff clearly establishes the specific cause of the injury the presumption or inference disappears from the case. *Powell v. St. Joseph Ry., Light, Heat and Power Co.*, 336 Mo. 1016, 81 S.W.2d 957 (1935) [4–7]; *Bratton v. Sharp Enterprises, Inc.*, 552 S.W.2d 306 (Mo.App.1977) [1–3]. Plaintiffs did establish the specific cause of the injury and the doctor's actions which led to that cause. There was, therefore, no further presump-

such a statement of non-abandonment.

tion or inference of negligence and it was plaintiffs' burden to establish that the doctor's actions were negligent.

It is an accepted principle in this state that expert medical testimony is ordinarily necessary to establish what constitutes due care and skill of a surgeon under the circumstances of a particular case. *Hart v. Steele*, 416 S.W.2d 927 (Mo. 1967) [7, 8]. There was no such evidence here. Plaintiffs did not establish, nor did any of the defendants, that Dr. Utterman was aware, or should have been aware, of the flammable nature of the drape. Plaintiffs' own expert gave his opinion that Dr. Utterman, in the absence of knowledge of the flammable nature of the drape, used the degree of skill and learning a licensed physician ordinarily should use under the same or similar circumstances in disposing of the burning sponge while engaged in an operation. Plaintiffs are bound by the uncontradicted testimony of their own witness. *Furlong v. Stokes*, 427 S.W.2d 513 (Mo.1968) [7].

Plaintiffs assert that there were other methods of disposing of the sponge and that the jury could decide that, in view of the options, the method used by the doctor was negligent. There were also explanations why, in the operating room environment, such alternatives were not acceptable. The evidence was uncontradicted that throwing a smoldering sponge at the feet of the circulating nurse was an acceptable method for a doctor concentrating on surgery to use to dispose of the offending item. We do not believe that a jury has sufficient knowledge of operating room procedures, the procedures which the surgeon must follow, the duties of the operating room personnel, and the environment of the operating room to make a determination that Dr. Utterman acted negligently in the absence of expert medical testimony to that effect. No contention is advanced, because the evidence clearly established the contrary, that igniting the sponge constituted negligence. The evidence was not sufficient to make a submissible case against Dr. Utterman.

*Plaintiffs' Appeal of Judgment for Ste. Genevieve Hospital*

Plaintiffs' appeal from the judgment in favor of Ste. Genevieve Hospital is based upon the contention that the evidence established as a matter of law that the hospital was liable under the strict liability theory and that certain instructional errors occurred in respect to that defendant. The hospital responds by contending that no submissible case was made against it on either of plaintiffs' two theories—strict liability and *res ipsa loquitur*. Plaintiffs in their brief attempt to support a submissible case against the hospital only on the strict liability theory. Johnson and Johnson attempts to support a submissible case against the hospital on both theories. We entertain some reservations about the standing of Johnson and Johnson to raise the issue, but will not further extend this opinion by discussing that matter. Suffice it to say that for the reasons set forth in dealing with Dr. Utterman's appeal, we do not find *res ipsa loquitur* applicable here.

We also do not find a submissible case against the hospital on a strict liability theory. There was no evidence of negligence by the hospital because there was no evidence it knew or should have known of the dangerous nature of the drape. Plaintiffs base their claim of a submissible case on the contention that the hospital was a "seller" of the drape under Sec. 402A. We are unable to so conclude. The "seller" referred to in Sec. 402A is one "engaged in the business of selling such a product." There is no evidence that the drape was sold by the hospital to plaintiffs or that the hospital was in the business of selling disposable drapes. The hospital purchased the drape for its own use in treating patients. In this respect the hospital is in no different position than any other business which purchases goods for its own use in conducting its business. We can see no reason to extend the application of Sec. 402A to such situations nor have we found any courts which have done so. *See, Vergott v. Deseret Pharmaceutical Company, Inc.*, 463 F.2d

12 (5th Cir. 1972); *Silverhart v. Mount Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971). The purposes of Sec. 402A would not appear to be served by such an extension.

Plaintiffs rely upon *Cunningham v. Mac-Neal Memorial Hospital,* 47 Ill.2d 443, 266 N.E.2d 897 (1970), involving blood transfused into a patient by the hospital. We do not find that case applicable nor persuasive. Its application to anything except blood is questionable even in Illinois in view of *Dubin v. Michael Reese Hospital and Medical Center,* 83 Ill.2d 277, 47 Ill.Dec. 345, 415 N.E.2d 350 (1980). Factually it is clearly distinguishable from the drape involved here, and it appears to reflect a distinctly minority position. *See, Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E.2d 792 (1954); *Shivers v. Good Shepherd Hospital Inc.,* 427 S.W.2d 104 (Tex.Civ.App. 1968); *Brody v. Overlook Hospital,* 127 N.J. Super. 331, 317 A.2d 392 (App.1974), *aff'd* 66 N.J. 448, 332 A.2d 596 (1975); *Sawyer v. Methodist Hospital,* 522 F.2d 1102 (6th Cir. 1975); *Gile v. Kennewick Public Hospital District,* 48 Wash.2d 774, 296 P.2d 662 (1956); and *see* Sec. 431.069, RSMo 1978. We conclude that plaintiffs failed to make a submissible case against the hospital.

Judgment as to Ste. Genevieve County Memorial Hospital affirmed, judgment as to Dr. William Utterman is reversed, judgment against Johnson and Johnson and in favor of each plaintiff for actual damages affirmed, judgment against Johnson and Johnson in favor of each plaintiff for punitive damages reversed and remanded for new trial.

SATZ, P. J., and SIMON, J., concur.