George O. GRADY, Plaintiff-Appellant/Cross-Respondent,

v.

AMERICAN OPTICAL CORPORATION, Robert A. Nieberding, d/b/a R.A. Nieberding Co., Defendants-Respondents/ Cross-Appellants.

Nos. 48682, 48608.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 17, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 14, 1986.

Application to Transfer Denied Feb. 18, 1986.

Douglas P. Dowd, Dowd & Dowd, P.C., St. Louis, for plaintiff-appellant/cross-respondent.

Frank N. Gundlach, St. Louis, for defendants-respondents/cross-appellants.

KELLY, Judge.

Plaintiff George O. Grady, following a jury trial, was awarded damages of $350,-000.00 against American Optical Company, hereinafter American, and Robert A. Nieberding, d/b/a Nieberding Company, hereinafter Nieberding. Both defendants filed motions for judgment in accordance with defendants' motions for directed verdict, or in the alternative for a new trial, or in the further alternative for remittitur. The trial court sustained the defendants' motions for a new trial but denied their other alternative motions. Defendants have appealed from the order denying their motions for judgment in accordance with their motions for directed verdict.

Plaintiff, hereinafter Grady, has appealed from the order granting defendants a new trial. These appeals were consolidated in this court.

Initially, inasmuch as the granting of the defendants' motions for new trial was to remove an adverse judgment against them, the denial of their motions for judgment n.o.v. neither constitutes a final judgment within § 512.020 RSMo 1978, nor adversely affects or aggrieves them so as to give them standing to appeal. *State ex rel. Mather v. Carnes*, 551 S.W.2d 272, 279[3] (Mo.App.1977); *Powell v. Watson*, 516 S.W.2d 51, 52[3] (Mo.App.1974).

Despite the fact that this jurisdictional question has not been raised by the parties to this appeal, it is our duty to notice that question ex mero motu, *Powell v. Watson*, supra, at p. 52[2], and dismiss the appeals of American and Nieberding for the reasons hereinbefore stated. *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 941[4] (Mo. App.1983).

Dismissal of the appeals of American and Nieberding does not, however, foreclose a challenge to the submissibility of the case against them because this question was preserved in their after-trial motions, and where the record shows that the plaintiff cannot recover under the law and the evidence, we will direct entry of judgment for the defendants and spare another trial. *Mrad v. Missouri Edison Co.*, supra, at p. 942[6, 7].

Grady brought this action under a strict products liability failure to warn theory after a pair of safety glasses allegedly manufactured by American and distributed to Grady's employer, Scullin Steel, by Nieberding shattered causing injuries to Grady.

On appeal American and Nieberding contend that Grady did not make a submissible case because neither defendant owed a duty to plaintiff to warn plaintiff (a) that safety glasses and lenses could be broken by excessive forces because any reasonable wearer of safety glasses and lenses knew that the glasses would break if subjected to excessive forces and Missouri law imposes no duty to warn a consumer of obvious and commonly known dangers; (b) that safety glasses and lenses were not reasonably intended to be worn by consumers to protect them against an explosion of the type mentioned in evidence; and (c) there was no competent evidence that either of the defendants manufactured or sold the safety glasses or lenses worn by Grady at the time of the explosion.

In considering a products liability defendants' contention that plaintiff did not make a submissible case we must view plaintiff's evidence in a light most favorable to plaintiff, give the plaintiff the benefit of inferences reasonably drawn from the evidence and disregard defendants' evidence that does not support plaintiff's case. *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 274[1] (Mo. banc 1984).

Viewed in this light, the jury could have found from the evidence that Grady worked for Scullin Steel Corporation from 1974 to 1979, and during most of this time as a "burner." His job required that he use an acetylene torch to burn off unwanted steel on castings for railroad cars.

On February 7, 1979, he arrived at work at about 6:00 a.m. and put on his safety equipment, which included a welding hood, safety glasses, a respirator, a fire-retardant jacket, hearing protection, leather leggings, a safety cap, and leather gloves.

After reporting to his work station, Grady had difficulty lighting the tip of his cutting torch and went to the maintenance department in another building at the plant to get a new tip. After he returned to his work place he placed the acetylene torch on a barrel and attempted to light it when an explosion occurred in which both the barrel and the acetylene torch flew into the air. Grady was struck by the acetylene torch causing his nose and cheekbone, as well as the orbit bone beneath his right eye, to fracture, and also shattering the right lens of his safety glasses sending pieces of glass into his right eye. At the time of the explosion his welding hood was not down covering his face.

After the explosion, Grady was taken to the plant nurse and then to Deaconess Hospital. Ester Stanley, a welder, picked up the safety glasses Grady had been wearing and gave them to John Gilliam, the vice-president in charge of the union safety committee; who in turn gave them to either Bernard Lehr, who was at the time safety director, or to Joseph Pavero, who was at the time safety administrator. The glasses were not introduced into evidence at trial; however, Grady testified that the glasses were American glasses; that during the period he worked at Scullin Steel, the company bought only American safety glasses; and that that manufacturer's name was on the frames.

Joseph Pavero,[1] Safety Director at Scullin Steel, testified that to the best of his knowledge all the safety glasses in use at Scullin Steel in 1979 were American glasses purchased through Nieberding. Bernard Lehr, who was the safety director at the time of this explosion did not testify at trial. Pavero also testified that prior to February 7, 1979, he believed that safety glass lenses were designed to granulate into harmless powder rather than fragment when they broke. He believed that if safety glass shattered it was defective and that what distinguishes safety glass from ordinary glass "is not its ability to withstand a blow but its ability to keep it [the glass] from shattering."

Robert Nieberding also testified that he had sold safety glasses to Scullin Steel for 35 years; and that he did not know these glasses could shatter and splinter and hurt someone's eyes.

The safety glasses manufactured by American had a warning tag attached to the nose bridge when they were originally shipped to a purchaser. The tag contained the following warning:

### CAUTION

These hardened glass lenses are impact resistant but are not unbreakable. Clean and inspect lenses frequently. Pitted and scratched lenses reduce vision and seriously reduce protection. Replace immediately. Meets

ANSI Z 87.1–1968

Since this tag was attached to the nose bridge, it had to be removed before the glasses could be worn. None of the witnesses who worked at Scullin remembered seeing these tags.

There was testimony by an expert in the material packaging and handling field who had acted as a consultant to various corporations on legal matters involving the ade-

---

1. Pavero, at the time Grady sustained his injuries was the safety administrator; he became safety director in October, 1979.

quacy of warnings. According to his testimony the warning tag was inadequate because of the ease with which it could be removed or could accidentally come off. He thought that a warning that the glasses could shatter could have been embossed on the side shields or side frames of the safety glasses and that the warning quoted hereinabove inadequately explained the danger.

An optometrist, Kermit Kors, testified that he had just completed a 3 year study under the auspices of the National Institute of Occupational Safety and Health on the impact resistance of lenses and frames. He testified that heat tempered lenses could shatter and cause eye injury and that it was a popular misconception that safety glasses would not cause harm if they were broken because the fragments would have rounded edges. He said this simply was not the case; that the fragments of a broken safety glass lens do have sharp edges.

There was ample evidence that Grady sustained serious injuries to his right eye because of slivers of glass from the right lens of the safety glasses he was wearing at the time of the explosion.

■ Grady submitted his claims against American and Nieberding on a "failure to warn" theory of strict products liability. Under this theory a manufacturer and/or distributor can be held strictly liable if injury results from its failure to provide an adequate warning of danger inherent in the use of the product it sells. *Duke v. Gulf & Western Manufacturing Company*, 660 S.W.2d 404, 418[23] (Mo.App.1983). However, manufacturers and distributors are not under a duty to provide warnings about dangers which are open and obvious, or which are commonly known. If the user of a product knows or reasonably may be expected to know of a particular danger, strict liability will not result from a failure to warn of that danger. *Duke*, id., at p. 418; *LaPlant v. E.I. DuPont DeNemours and Company*, 346 S.W.2d 231, 245[27] (Mo.App.1961); Restatement (Second) of Torts, § 388 Comment K.

Defendants, American and Nieberding, contend that the danger of glass shattering is a matter of common knowledge and therefore they were under no duty to warn Grady or his employer that safety glass can shatter and cause injury to the wearer's eyes.

We believe it is obvious that untreated glass will break and shatter. The issue here, however, is whether it is commonly known that which is identified as *"safety glass"* will shatter if broken.

Only one case considering this question has been called to this court's attention, and in that case, *American Optical Corporation v. Weidenhamer*, the question was considered by both the Indiana Court of Appeals and the Indiana Supreme Court. The opinion of the Indiana Court of Appeals is that the use of the term safety glass could lead a wearer to believe that the glasses could not harm him, and thus a jury issue was presented as to whether safety glasses that shattered were unreasonably dangerous, i.e., dangerous to an extent beyond that which would be contemplated by the ordinary user. *American Optical Corporation v. Weidenhamer*, 404 N.E.2d 606, 615–618[8] (Ind.Ct.App.1980).

However, the Supreme Court of Indiana reversed the appellate court's decision in *American Optical Corporation v. Weidenhamer*, 457 N.E.2d 181 (Ind.1983), stating at p. 181 that it was obvious to all that the eyes of a wearer of safety glasses could be injured if his safety glasses were broken "through some fortuitous event." We disagree.

Unless a court can say as a matter of law that a product is not more dangerous than a reasonable user would have expected, the question is one for the jury. *Racer v. Utterman*, 629 S.W.2d 387, 394[6] (Mo.App. 1981). Where it is possible for reasonable men to draw different conclusions from the facts, the question is not one of law, but of fact and the dispute is for a jury to resolve. *Burke v. Moyer*, 621 S.W.2d 75, 79[8] (Mo. App.1981); *McIntyre v. Everest & Jen-*

**916**

*nings, Inc.,* 575 F.2d 155, 158[3] (8th Cir. 1978) (applying Missouri law).

The question whether it is open and obvious that safety glasses can shatter and cause injury to one's eyes is clearly one on which reasonable people can draw varying conclusions. Grady's expert, Kermit Kors, testified that his research had indicated that there was a popular misconception that safety glasses won't have sharp edges when broken. *Webster's Third International Dictionary,* (1976) defines "safety glass" at p. 1998 as:

"1. LAMINATED GLASS: 2. glass that is strengthened by tempering and that when struck breaks into relatively harmless granules rather than jagged pieces; WIRE GLASS."

Joseph Pavero testified that "laminated safety glass used in car windshield [sic] would not fragment. It would granulate if broken"; and that although he worked in the safety business between 1968 and 1981, he was not aware of this danger. Grady also testified that he had not known of the possibility that safety glass could fragment and cut the eye of the wearer if it was broken.

■ Thus, there was a jury question on whether the glasses worn by Grady on February 7, 1979, were defective, and we cannot conclude on the record before us that the danger was so obvious as to have relieved defendants of their duty to warn the user of the safety glasses.

■ The manufacturer of a product, under Missouri law, is only required to warn of hazards attendant upon the use of a product in a reasonably anticipated manner and for the purpose for which it is supplied. It is of course not necessary for the plaintiff to show that the precise circumstances which led to the explosion of February 7, 1979, were foreseeable, but the plaintiff must present evidence that would enable a jury to find that it was reasonably foreseeable that users would encounter similar impacts while wearing the safety glasses as protection for the eyes. *Cryts v. Ford Motor Company,* 571 S.W.2d 683, 688[8]

(Mo.App.1978); *Roger v. Toro Manufacturing Company,* 522 S.W.2d 632, 638[8] (Mo.App.1975).

■ The defendants were not required to produce an accident free product. However, if impacts of the type and magnitude encountered by Grady were foreseeable, each defendant had a duty to warn of the hazard. *Baker v. International Harvester Company,* 660 S.W.2d 21, 23[2] (Mo.App. 1983); *Racer v. Utterman,* supra, at p. 393–394[3–5].

Defendants were furnishing a product, safety glasses, to an industry whose employees used acetyelene torches in the course of their employment. There was testimony by an expert, Professer Kermit Kors, an optometrist employed by the University of California School of Optometry, Berkley, California, who had just completed a 3 year study of the impact resistance of lens-frame systems pursuant to an award of the National Institute of Occupational Safety and Health, that the term "shatterproof" in connection with safety glasses is a relative term and not absolute because they are designed to be impact resistant, but given sufficient impact, they will fracture. He further testified that there is a misconception that the tempered lenses or chemically tempered lenses will not cut the tissues of the eye because the fragments are round, because that simply was not true, and all the fragments have sharp edges.

Another expert, Professor William K. Volz, a Chemical Engineer Consultant, employed by Washington University in St. Louis, testified that he investigated the inflammability characteristics of the fluid that had been in the barrel at Scullin Steel on the day of this incident. In response to a hypothetical question he opined that the fluid which was originally stored in the drum was not responsible for the explosion; that the explosion was caused by the methane gas and oxygen utilized in the cutting torch. He also was of the opinion that the

methane gas was admitted into the drum and when ignited caused the explosion, which in turn caused the cutting torch to strike the safety glasses Grady was wearing.

In this state the courts have treated strict liability in tort as a doctrine which looks to the product not to the conduct of the manufacturer or seller. The liability arises because of the condition of the product regardless of the care exercised by the manufacturer or seller. The distinction between negligence and strict liability is that in the former the duty is based upon the foreseeability of harm or injury from defendant's conduct while in the latter the liability arises because of the foreseeable use of the product, not the foreseeable harm. *Racer v. Utterman,* supra, at p. 395. Strict liability in tort imposes a duty on the manufacturer not to introduce into commerce an unreasonably dangerous product—whether that danger arises from defective manufacture, defective design, or failure to warn of danger, and the breach of that duty occurs by the act of introducing such product into commerce. *Id.,* p. 395[11].

We are of the opinion that the evidence demonstrates that both American and Nieberding knew that these safety glasses were to be used by employees of Scullin Steel to protect their eyes. As a matter of fact all employees of Scullin were required to wear safety glasses while in the plant and working to keep sand, dust and small bits of metal particles out of their eyes. At the time of this occurrence Grady was wearing these safety glasses to protect his eyes and this was a use the defendants should have foreseen.

American knew that although the safety glasses were impact resistant given sufficient impact they would break, and in breaking would shatter in close proximity to the wearer's eyes. Nevertheless, they did not warn the user of this fact. Because of the popular misconception that safety glass would not cause harm if they were broken, we believe it was a question for the jury whether the defendants should have warned users of the safety glasses that if broken the glasses would shatter and could injure the wearer's eyes.

■ American and Nieberding contend that by placing the "Caution" tag on the bridge of the glasses they fulfilled any duty, if they had one to Grady, to warn him of any dangers inherent in the use of the glasses. However, we believe that Grady made a case for the jury on the issue of whether the warning was adequate. "Whether a given warning is sufficient depends upon its placement or location, the language used and how it may or may not impress the average user" of the product. *Tennis v. General Motors Corporation,* 625 S.W.2d 218, 226[13] (Mo.App.1981). The "Caution" tag American attached to the safety glasses did not warn a wearer that the lenses would shatter and thereby cause injury to the wearer's eyes.

■ Both American and Nieberding also contend that even if they had a duty to warn Grady and if the warning they gave was inadequate, they are nevertheless relieved of liability because Scullin Steel should have provided a warning. That is not the law in the state of Missouri. Manufacturers and retailers have a duty to warn about hazards involved in the use of their products where failure to do so will make the product unreasonably dangerous. *Duke v. Gulf & Western Manufacturing Company,* supra, at p. 418[21] (Mo.App. 1983). Furthermore, there was no evidence that anyone at Scullin knew of the danger that the lenses in safety glasses would shatter.

None of the cases cited by the defendants are Missouri cases, and in all of those cases the plaintiff's employer was fully aware of the danger and there was no reason to believe that the employer would not inform the employee. There is no evidence in this case to support such a finding.

■ The defendants also contend that since Scullin Steel required its employees

to wear these safety glasses on the job, Grady had to wear them and therefore no warning would have altered his conduct.

There is a rebuttable presumption that an adequate warning would have been heeded which arises as a matter of law. *Duke v. Gulf & Western Manufacturing Company,* supra, at p. 419[25]. However, there was no evidence that either Scullin or Grady knew that the lenses of these safety glasses would shatter on impact, and we have already held that Grady made a case for the jury on the question whether the warning was adequate. In *Racer v. Utterman,* supra, at p. 394[8, 9], the court said:

In failure-to-warn cases generally, certainty that the existence of the warning would have prevented injury is not required. In the absence of compelling evidence establishing that the absence of a warning did not cause the injury the causation question becomes one for the jury.

We hold that Grady made a submissible case and the trial court did not err in denying defendants' motion for judgment n.o.v.

Grady appealed from the order of the trial court granting American and Nieberding a new trial. On appeal he contends that the trial court exceeded its jurisdiction in granting the defendants a new trial on the ground that it had erred in submitting a single verdict director against American, the manufacturer, and Nieberding, the supplier of a product, rather than submitting two separate verdict director instructions in that (1) such error was not raised in the defendants' motions for new trial, and (2) the trial court granted said motions more than thirty days after entry of judgment.

The jury returned its verdict in this case on February 2, 1984. On February 16, 1984, the defendants filed their separate motions for judgment n.o.v. or in the alternative, motions for new trial. The defendants' motions were identical in content. On April 17, 1984, the trial court simultaneously overruled the defendants' motions for judgment n.o.v. and sustained their motions for new trial and filed a "memorandum" explaining the reasons why it was granting the defendants a new trial.

In its order of April 17, 1984, the trial court specifically stated that the motions for new trial were granted "on the grounds set forth in Paragraphs 6 and 7 of the Motion[s] for a New Trial." The memorandum filed simultaneously with the order granting the new trial stated:

The first assignment of the new trial motion meriting consideration is paragraph 6. It will be observed that said paragraph 6 attacks Instruction No. 4, the plaintiff's verdict directing instructing [sic] *against both* defendants. In this case plaintiff seeks to recover from two separate defendants not otherwise vicariously liable..... Instruction No. 4 submitted the liability of both defendants collectively and their actions, even though American Optical Corporation, as manufacturer, and Robert A. Nieberding, as dealer, clearly performed separate functions..... The submission of liability of two defendants in a single verdict directing instruction is prejudicial error inasmuch as, in effect the jury is placed in a quandary in considering the separate acts of defendant and the legal obligation thereof.

Paragraph 6 of defendants' Motions for New Trial stated:

The court erred in giving Instruction No. 4 ... for the following reasons:

a. The evidence showed that defendant Robert A. Nieberding, d/b/a R.A. Nieberding Company was not the sole supplier of American Optical Corporation glasses to plaintiff's employer, that Scullin Steel employees wore other manufacturers' glasses and that Scullin Steel employees wore cross-matched lenses and frames, and there was no requirement in said Instructions that the jury must find that (1) plaintiff was wearing American Optical Corporation lenses when he was injured on February 7, 1979, and (2) that said lenses were supplied to Scullin Steel by Robert A. Nieberding, d/b/a R.A. Nieberding Company.

b. Permitted a verdict in favor of plaintiff even though the facts hypothesized were not supported by the evidence;

c. Permitted a verdict for plaintiff even though competent, credible evidence proved as a matter of law that defendants were not liable under strict liability.

Instruction No. 4, an MAI 25.05 instruction, modified pursuant to the Notes on Use (1980 Revision), reads as follows:

Your verdict must be for plaintiff against defendant American Optical Corporation and defendant Robert A. Nieberding d/b/a R.A. Nieberding Company if you believe:

First, defendants sold the safety glasses in the course of defendants' business, and

Second, the safety glasses were then unreasonably dangerous when put to a reasonably anticipated use without knowledge of their characteristics, and

Third, defendants did not give an adequate warning of the danger, and

Fourth, the product was used in a manner reasonably anticipated, and

Fifth, plaintiff was damaged as a direct result of the safety glasses being sold without adequate warning.

Grady argues that the trial court erred in granting defendant's motions for new trial with respect to the submission of a single verdict director against both defendants because the error, if error, was not raised in their motions for new trial; that therefore the trial court erred in that it exceeded its jurisdiction in ordering a new trial on grounds not raised in the motions for new trial and the court order was entered more than thirty days after the entry of judgment. We agree.

Rule 75.01 provides:

The trial court retains control over judgments during the thirty day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend or modify its judgment within that time. *Not later than thirty days after entry of judgment* the court

of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party and every order granting a new trial shall specify the grounds therefor. (Emphasis supplied).

The Rule makes it clear that after the thirty day period following entry of judgment, a trial court's jurisdiction to grant a new trial on its own motion expires. After this period a trial court may order a new trial but only on grounds properly presented in a motion for new trial or upon a finding that a plain error affecting substantial rights has occurred. *Stein v. McDonald*, 394 S.W.2d 297, 300[5] (Mo.1965); *Goodman v. Allen Cab Company*, 360 Mo. 1094, 232 S.W.2d 535, 539[7] (1950); *Stretch v. State Farm Automobile Insurance Co.*, 645 S.W.2d 729, 731[1] (Mo.App. 1983). Rule 78.08.

Our comprehension of paragraph 6 of defendants' motion for a new trial is that Instruction No. 4 was error because the Instruction did not conform to the evidence presented at trial in that it did not require the jury to find that the lenses in the glasses worn by Grady when he sustained the injuries complained of were manufactured by American and supplied to Scullin Steel Corporation (hereinafter Scullin) by Nieberding. They argue that this factual determination was necessary because there was evidence in the case that American was not the sole manufacturer of the lenses used by the employees of Scullin and that Nieberding was not the sole supplier of American lenses to Scullin.

The trial court, in its memorandum, reasoned that the single verdict director against both defendants failed to delineate the functions performed by each defendant and thereby placed the jury in a quandary in considering the separate acts and legal obligations of each defendant; that the instruction submitted the liability of the defendants' function as a manufacturer or a supplier as well as the legal obligations imposed on each because of these separate functions. This was not, however, the er-

ror raised in the defendants' motions for new trial.

The defendants alleged that the instructions failed to require the jury to identify or connect defendant American as the manufacturer and defendant Nieberding as the supplier of the lenses which allegedly injured the plaintiff. The failure to submit separate verdict defenders against each defendant was not the basis of the defendants' motions. Thus the ground on which the trial court based its order was not raised in defendants' motions for new trial.

■ Inasmuch as the trial court did not base its order on error alleged in defendants' motions for new trial, it did not retain jurisdiction to order a new trial on its own initiative under Rule 75.01, and therefore said order is null and void.

In his next point Grady alleged error in the trial court's finding that the use of the term "occurrence" in the damages instruction without any modifiers was prejudicial error. The trial court concluded that the term "occurrence" was confusing to the jury because the term "occurrence" could have referred to the explosion as well as the defect in the lenses giving the jury a roving commission to award damages for injuries beyond those caused by the defective lenses.

■ The MAI Notes on Use require modification where the evidence discloses more than one event which is claimed to have caused plaintiff's injuries. Even where an instruction deviates from the MAI there is a trend away from reversal unless there is a substantial indication of prejudice. *Fowler v. Park Corporation*, 673 S.W.2d 749, 756–757 (Mo. banc 1984). It is not enough to show an erroneous deviation from MAI and its Notes on Use; there must be a showing of prejudice as well. *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984). Careful consideration of the record on appeal leads us to conclude that no such prejudice has been shown in this case.

In *Hudson v. Carr*, the defendant claimed that the plaintiff should have modified the term "occurrence" because during

the trial reference was made to a subsequent accident which caused injury to plaintiff unrelated to the collision which caused injuries for which the plaintiff sought damages. The defendant claimed that the term "occurrence," unmodified in the damages instruction, may have led the jury to award damages for the subsequent injury mentioned in the testimony in addition to the injuries caused by the collision. Our Supreme Court found that the evidence and facts presented during the trial clearly demonstrated that the collision was the event for which the plaintiff sought damages and that the jury could not have been confused by the unmodified term in the instruction so as to award damages for an occurrence other than the collision. In the context of the record, the court found that the erroneous deviation was not prejudicial. *Hudson*, 668 S.W.2d 68, 71.

So too in the present case, the pleadings and evidence presented during the trial clearly identify the occurrence causing Grady's injuries, the specific injuries caused by that occurrence, and the amount of damages sought. In his petition, Grady prayed for damages for injuries to his eye, the phobia he suffered as a result of the eye injury, lost earnings, and future pain and suffering, all of which he claimed were caused by the failure to warn as to the lenses. The record reflects that plaintiff directed his evidence toward only those injuries. This is not a case like *Mersman v. O'Neil*, 689 S.W.2d 140 (Mo.App.1985) where substantial evidence of concurrent civil proceedings, which were separate and distinct from the criminal proceeding which formed the basis for plaintiff's malicious prosecution action, was fully developed during trial. In *Mersman*, the damage instruction directed the jury to award damages for the occurrence of the proceedings mentioned in the evidence. Under those circumstances the Western District found that because the other proceedings were not referred to casually, but belabored at length, the tendered instruction could have confused the jury so that they may have considered both proceedings in awarding damages. Finding prejudice to the defend-

ant, the judgment was reversed. This is not the case here.

The record reveals that references were made to the explosion by plaintiff's witnesses who testified concerning the need to warn ultimate consumers of the extent of safety the lenses provided, the amount of force the lenses were designed to withstand, and the amount of force which was exerted on Grady's lenses which caused them to shatter. The plaintiff did not refer to the injuries directly caused by the explosion nor claim any injuries beyond those attributed to the shattering lenses. The record indicates it was the defendants who laboriously developed the evidence of the explosion and made references to the cheekbone fracture and other facial injuries. Further, the briefs reflect that during opening statement the defendants informed the jury that Grady had sustained a fractured cheekbone and other facial injuries and that during closing argument the plaintiff advised the jury not to award damages for the broken cheekbone and other injuries and the defendants told the jury that the American product was not responsible for those other injuries.

■ It is clear from the pleadings, evidence, argument, and instructions that Grady was seeking damages for only those injuries resulting from the failure to warn. Under the Notes on Use there was no need to modify the term "occurrence" where Grady claimed injuries caused only by one occurrence. In addition, even though the explosion was mentioned briefly, there was no substantial development of this event nor reference to injuries resulting therefrom which might have confused the jury to award damages beyond those caused by the shattering of the lenses. The issues for the jury were clearly delineated in the pleadings, evidence, argument, and instructions during the trial. Under these circumstances, considering the whole record, the defendants have not shown that the term "occurrence," given in the damages instruction without modification, confused the jury and misdirected them to award damages for other injuries beyond those

caused by the defective lenses. Thus, we find no substantial indication of prejudice resulting from the instruction. *See Lawton v. Jewish Hospital of St. Louis,* 679 S.W.2d 370, 374 (Mo.App.1984).

Accordingly, we reverse the trial court's order for a new trial and remand the cause to the Circuit Court with directions to reinstate the verdict of the jury.

STEPHAN, C.J., and SIMON, P.J., concur.